Battle, J.
 

 The executors of William D. Davenport, having met with difficulties in the settlement of the estate of their testator, arising from the conflicting claims of the legatees named in his will, among themselves, and also between them and the widow, who dissented from it, have filed this bill for the purpose of obtaining the advice of the Court upon certain questions which are therein stated.. In the argument here, the counsel have conceded that only two or three of these en-quiries admit of much doubt, and our attention, therefore, will be directed mainly to them.
 

 1. The widow having dissented from the will, claims that, in ascertaining the share of the personal estate to which she is entitled, she has the right to have the slaves, Ganza and Aaron, who were prosecuted, convicted and hung for murdering her husband, valued as if they had not committed any felony, by which their lives were forfeited. This claim is ungracious and unfounded. Those slaves were, in fact, of no value; just as if they had had the small-pox or any other mortal disease, at the death of the testator, and had died thereof, soon after. This proposition is so plain, that it does not admit of further elucidation by argument.
 

 She also claims to have her share exempt from any costs attending the prosecution and defense of those slaves, and also of the slave, George, who was acquitted. We will dispose of this question in connection with the third, in which the legatees of these slaves, respectively, claim to have the costs above stated, paid out of the general assets of the estate, while the widow, and the other legatees, contend that the costs of the prosecution and defense of each of these slaves, ought to fall on the legatee to whom he is given by the will. As to the slaves, Ganza and Aaron, they were never accepted by the
 
 *8
 
 persons to whom they were respectively bequeathed, they formed a part of the estate of the testator, and it was the duty of the executor to take care of them, and have them properly defended, and, we think, the necessary costs and expenses of such defense, must be borne by the general assets of the estate. The case of George was different; he was received by the legatees to whom he rvas bequeathed, and sold by them. They took him
 
 own onere,
 
 and, of course, must pay the costs of his defense.
 

 The bequests of the slaves, Ganza and Aaron, were specific, and of course, the loss of them, by hanging, must fall on the persons to whom they were respectively given, just as if the slaves had died a natural peath.
 

 3. The third question has been already answered, in our opinion upon the latter part of the first.
 

 4 and 5. The fourth and fifth questions may be considered together. The language of the 13th clause is too explicit to admit of any doubt, that the division between the legatees, Mary Amanda Spruill, Mary Ann Ward, and the children of Wm. IT. Davenport, is to be
 
 per capita;
 
 the will says, expressly, that Mary Amanda Spruill and Mary Ann Ward, are “to share equally with each of the children of William H. Davenport.” How sharing equally with
 
 each,
 
 can be construed to mean equally with
 
 all,
 
 we cannot conceive. The consequence is, that Mary A. Spruill, and Mary A. Ward, and W. IT. Davenport’s children divide one share equally between them.
 

 6. The legatee, Mary Ann Ward, claims interest on he.r legacy of $800, from the death of the testator; and her counsel argues strenuously that she is entitled to it. We think otherwise- The general 'rule is, that when the time for the payment of a general legacy is fixed by the testator, it will not carry interest before that time; 2 Roper on Leg. p. 190, ch. 20, sec. 3. There is an admitted exception in the case of such a legacy to a child, or to one to whom the testator stands
 
 in loco parentis,
 
 who is otherwise unprovided for; 2 Rop. on Leg. p. 192, ch. 20, sec. 4. This exception is not made in fa
 
 *9
 
 vor of a grandchild of the testator, unless he stands
 
 in loco parentis
 
 to the legatee. See 2 Rop. on Leg. p. 202, ch. 20, sec. 5, and the cases there cited. There is nothing in the present will, or in the facts stated in the pleadings, to show that the testator undertook to provide for the legatee as if she were his own child. It is mentioned as a fact, that her mother was dead, but nothing is said of her father, or whether he had made any provision for her. The testator does not call the legacy
 
 apm'tion,
 
 as was done in the case of
 
 Acherly
 
 v. Vernon, 1 Peere Williams, 783, nor use any other expression
 
 to
 
 show that he had placed himself in the stead of the father of the legatee. The general rule, therefore, must prevail, and no interest can accrue on the legacy until it shall become due.
 

 7. and 8. The legatees of the slaves, respectively, are entitled to their hires from the death of the testator. These legacies being specific, the legatees take them, upon the assent of the executor, with the profits which they have produced, just as they would be entitled to the interest on bonds given specifically. See
 
 Beasley
 
 v. Knox, decided at this term, (ante 1.) Ift ascertaining the shares, to which the widow is entitled, these slaves must be valued, as of the time of the settlement of the estate;
 
 Hunter
 
 v.
 
 Husted,
 
 Bnsb. Eq. Rep. 97.
 

 The parties may have a decree upon the principles herein stated. The costs must be paid out of the general assets of the estate.
 

 Pee Cuexam, Decree accordingly.