FIDELITY UNION TRUST COMPANY, A CORPORATION ORGANIZED UNDER THE LAWS OF THE STATE OF NEW JERSEY, PLAINTIFF-APPELLANT AND RESPONDENT, v. ESTHER K. PRICE, ET AL., DEFENDANTS-RESPONDENTS AND CROSS-APPELLANTS.

Argued November 10, 1952—Decided December 22, 1952.

*Mr. Irving Riker* argued the cause for the appellant-respondent Fidelity Union Trust Company (*Messrs. Riker, Emery and Danzig,* attorneys; *Mr. William G. Wood,* on the brief).

*Mr. Ira C. Moore, Jr.,* argued the cause for the respondents-cross appellants Esther K. Price and the Orange Orphan Society (*Messrs. Whiting, Moore and Phillips,* attorneys).

*Mr. Harry V. Osborne, Jr.,* argued the cause for the respondent-cross appellant Board of Social Service of the Diocese of Newark (*Messrs. Osborne, Cornish and Scheck,* attorneys).

*Mr. William Rowe* argued the cause for the respondent-cross appellant Trustees of Rutgers College (*Messrs. Lindabury, Steelman and Lafferty*, attorneys).

*Mr. Fredrick J. Waltzinger* argued the cause for the respondent-cross appellant Edith Ross Trowbridge.

The opinion of the court was delivered by

VANDERBILT, C. J.   The Fidelity Union Trust Company, individually and in a fiduciary capacity, instituted this action in the Chancery Division of the Superior Court seeking a declaratory judgment as to the constitutionality and general application of the so-called Prudent Man Investment Statute (*N. J. S.* 3A:15–18 *et seq.*) and its application to four specific trusts created prior to its passage.   On the petition of the plaintiff trust company and the cross-petitions of certain defendant beneficiaries under three of the trusts we granted certification to review the judgment of the Chancery Division.

### THE PRUDENT MAN INVESTMENT STATUTE

The principles incorporated in the Prudent Man Investment Statute are not novel.   The prudent man rule with respect to investments by a fiduciary was first enunciated in *Harvard College v. Amory*, 9 *Pick.* 446 (*Sup. Jud. Ct. Mass.* 1830) :

"All that can be required of a trustee to invest is, that he shall conduct himself faithfully and exercise a sound discretion.   He is to observe how men of prudence, discretion and intelligence manage their own affairs, not in regard to speculation, but in regard to the permanent disposition of their funds, considering the probable income, as well as the probable safety of the capital to be invested."   (at *p.* 461)

That case, in which the trustees were not surcharged for losses incurred through investing in common stock, found little acceptance elsewhere.   In New Jersey in the case of

*Gray v. Fox,* 1 *N. J. Eq.* 259 (*Ch.* 1831), Chancellor Vroom, after reviewing the English authorities, held:

"The principle to be extracted from these authorities is, that the loaning of trust money * * * on private security, is not a compliance with the rule that requires due security, and of course, that such loans are made at the risk of the trustee." (at *p.* 266)

"In this country, the amount of public or government stock is very small, and in an inland state like our own, there are few opportunities for investing in that kind of security. The stock of private companies is not considered safe, and investment in that species of stock would scarcely be encouraged by a court of equity. There is, then, no other but landed security that would come within the rule." (at *p.* 268)

This restricted view of a trustee's investment opportunities was followed in New Jersey, *Shepherd v. Newkirk,* 21 *N. J. L.* 302 (*Sup. Ct.* 1848); *Vreeland v. Vreeland's Admn'r.,* 16 *N. J. Eq.* 512 (*Prerog.* 1863); *Tucker v. Tucker,* 33 *N. J. Eq.* 235 (*Prerog.* 1880), affirmed 34 *N. J. Eq.* 292 (*E. & A.* 1881), and was in accord with the rule prevalent elsewhere. The decision in *King v. Talbot,* 40 *N. Y.* 76 (*Ct. App.* 1869), surcharging trustees for investing in equities of reputable corporations, prompted the New York Legislature to create a so-called legal list and was an important factor in inducing several states to adopt constitutional prohibitions against their legislatures giving trustees the power to invest in stocks of business corporations, see Shattuck, *The Massachusetts Rule of Trust Investments,* 82 *Trusts and Estates* 23 (1945).

Until recent years the majority of states have followed the New York rule and enacted statutes listing investments, or categories of investments, approved for fiduciaries, see *The Prudent Investment Theory in Trust Administration,* 1 *Rutgers L. Rev.* 130, 131 (1947). As a result, however, of increasing dissatisfaction with the investment limitations thus imposed, in 1942 a committee of the Trust Division of the American Bankers Association prepared a model statute following the Massachusetts prudent man investment rule. The model statute found considerable favor with the various

legislatures, and in the past ten years some 23 states, including New Jersey, have adopted it either in whole or in part or with minor variations. With some seven states adhering to the prudent man investment rule by court decision, it is readily apparent that the rule laid down in *Harvard College v. Amory, supra,* once generally rejected because it permitted trustees to invest in common stocks, now prevails in a majority of states.

The past century and a quarter has seen a gradual but continuous expansion of the investment powers of trustees in New Jersey. At the time of the decision in *Gray v. Fox, supra,* the only way executors, guardians and trustees could act with safety in making investment of infant's funds was to obtain instructions from the Orphans' Court pursuant to the then existing statute (*Rev. L.* 1820, *p.* 799, § 11) and follow these instructions. Thus, in *Gray v. Fox, supra,* the court said:

> "In cases coming under the act, trustees may take the responsibility of loss upon themselves, or they may throw it on the court. If the latter course be pursued, the directions of the statute are plain. They must obtain leave and direction for the purpose of putting out the money; not put out the money first, and at some future day, when difficulties are foreseen or loss apprehended, go to the court and obtain a decree of confirmation." (at *p.* 272)

Subsequently this rule applicable to infants' funds was extended by the Legislature to all funds in the hands of executors, administrators, trustees and guardians (*Rev. S.* 1847, *p.* 209). It was almost 20 years, however, before the first definitive statute relating to fiduciary investments was enacted making it lawful to invest trust moneys "in any of the bonds issued by this state," provided the deed of trust, the will or the court did not specially direct the manner of investment (*L.* 1865, *p.* 737). Thereafter the statutory legal list evolved as the result of piecemeal additions over the years, see Large, *Trustees' Investments in New Jersey,* 59 *N. J. L. J.* 349 (1936), until in 1951 prior to the enactment of the Prudent Man Investment Statute it was comprised

of a variety of securities, including bonds, preferred stocks and shares of savings and loan associations (*R. S.* 3:16–1 *et seq.*).

The New Jersey Prudent Man Investment Statute as enacted (*L.* 1951, *c.* 47; *N. J. S.* 3*A*:15–18 *et seq.*) constitutes an addition to and not a repeal of the existing statutes regulating fiduciary investments. Section 1 (*N. J. S.* 3*A*:15–18) includes several key definitions:

"(d) 'investments' includes property of every nature, real, personal and mixed, tangible and intangible, which persons of ordinary prudence and reasonable discretion acquire for the purpose of preserving their capital and of realizing income; and specifically includes, solely by way of description and not by way of limitation, bonds, debentures and other corporate obligations, capital stocks, common. stocks, preferred stocks, and shares of any open-end or closed-end management type investment company or investment trust registered pursuant to the federal investment company act of 1940, as from time to time amended;

(e) 'legal investments' includes all investments which a fiduciary is authorized to make pursuant to any statute of this state, other than this article; and when a fiduciary invests in, or when a trust estate holds a participation in a legal common trust fund, such participation shall be deemed to be a legal investment;

(f) 'limited legal investments' includes all investments which are not legal investments; and when a fiduciary invests in, or when a trust estate holds, a participation in a discretionary common trust fund, such participation shall be deemed to be a limited legal investment;"

Section 2 (*N. J. S.* 3*A*:15–19) sets up the standard of care and judgment required of fiduciaries:

"In investing and reinvesting money and property of a trust estate and in acquiring, retaining, selling, exchanging and managing investments, a fiduciary shall exercise care and judgment under the circumstances then prevailing, which persons of ordinary prudence and reasonable discretion exercise in the management of their own affairs, considering the probable income as well as the probable safety of their capital."

By Section 3 (*N. J. S.* 3*A*:15–20) a limitation is placed upon the investments authorized:

"Within the limitations of the standard prescribed by section 3A:15–19 of this title, a fiduciary may invest in any investments whatsoever; but no fiduciary shall make any investment for a trust estate in any limited legal investment if, on the valuation date, the aggregate value of all limited legal investments held in such trust estate exceeds, or if the investing in such limited legal investment would cause such aggregate value to exceed, 40% of the aggregate value of all the property which constitutes the principal of such trust estate."

Sections 4 through 7 (*N. J. S.* 3A:15–21 to 24) deal with mechanics of trust administration and are not here important. Section 8 (*N. J. S.* 3A:15–25) recognizes the precedence to be given to the terms of the trust instrument and the superintending jurisdiction of the court:

"If a trust instrument prescribes, defines, limits or otherwise regulates a fiduciary's powers, duties, acts, or obligations in acquiring, investing, reinvesting, exchanging, retaining, selling, valuing or otherwise acting with respect to the property of a trust estate, the trust instrument shall control notwithstanding this article; but nothing herein shall affect the jurisdiction of the superior court to order or authorize a fiduciary to depart from the express terms or provisions of a trust instrument for the causes, in the manner, and to the extent otherwise provided by law."

Section 9 (*N. J. S.* 3A:15–26) purports to construe certain phrases pertaining to investment commonly found in trust instruments:

"Whenever any trust instrument or any statute of this state, * * * directs or authorizes a fiduciary to make any investment for a trust estate in 'legal investments,' or in 'investments in which a fiduciary may by law invest' or in 'legal investments for trustees' or uses words of similar import, such words shall, in the absence of an express provision to the contrary contained in such trust instrument or such statute, be taken to include limited legal investments of the aggregate value as limited by this article."

By Section 10 (*N. J. S.* 3A:15–27) it is provided that nothing in the statute "shall require a fiduciary to invest in limited legal investments"; section 11 (*N. J. S.* 3A:15–28) makes applicable to limited legal investments the law generally applicable to legal investments; and the final section

12 (*N. J. S.* 3A:15–29) makes the statute applicable retrospectively as well as prospectively:

"This article shall apply to and govern trust estates heretofore and hereafter created, fiduciaries heretofore and hereafter appointed, and trust instruments heretofore and hereafter made."

It is readily apparent that the Prudent Man Investment Statute has the effect of expanding the types of investments which a fiduciary in this State may legally make by permitting an investment of not to exceed 40% of the *corpus* of his trust in any investments, even though not previously considered legal, providing the appropriate degree of care and judgment is utilized and the terms of the trust agreement or an order of the court are not violated. Beyond expanding the types of investments which a fiduciary may legally make, the statute effects no change in the rights and obligations of a fiduciary. Now as heretofore a trustee, if he would avoid being surcharged, is limited to investing in those types of investments authorized by statute, in the absence of controlling provisions in the trust agreement or an appropriate order of the court. Now as heretofore a trustee in making investments of whatever type must exercise that degree of care and judgment which persons of ordinary prudence and reasonable discretion exercise in the management of their own affairs, and must give due consideration both to the probable income from and the safety of the investment so that the interests of both the life tenants and the remaindermen shall be promoted to the fullest extent compatible with the interests of the other.

Further, it is plain that the provision of the statute making it applicable to prior created trusts is not constitutionally objectionable. The statute as thus applied in no way impairs the obligation of any contract or interferes with or alters any vested right or legal remedy that antecedently existed. It is the rule in this State that a trustee, in the absence of a contrary provision in the trust instrument or court order, may invest the *corpus* of the trust in such

investments as are legal or permitted by statute at the time the investments are made, *Bankers Trust Co. v. Bacot*, 6 *N. J.* 426 (1951); *Ritchie v. Farrelly*, 16 *N. J. Super.* 214 (*Ch. Div.* 1951); *Reinhardt v. National State Bank*, 130 *N. J. Eq.* 34 (*Ch.* 1941); *Reiner v. Fidelity Union Trust Co.*, 126 *N. J. Eq.* 78 (*Ch.* 1939), reversed on other grounds, 127 *N. J. Eq.* 377 (*E. & A.* 1940). There is sound reason for this rule. Unless the trust instrument provides otherwise, it is presumed that the trustor intended that his trustee should have the power to make such investments of the *corpus* of the trust as the Legislature in its wisdom might from time to time permit. As stated in *Reiner v. Fidelity Union Trust Co., supra,* where the trust agreement gave the trustee power on the redemption of certain stock to "invest the proceeds derived therefrom in such securities as are by the laws of the State of New Jersey designated as legal investments for trust funds":

> "To interpret the language of this trust instrument as requiring that the trust funds should be invested only in securities which were legal investments for trust funds at the time of the creation of the trust is to attribute to the creator of the trust a complete lack of ordinary intelligence. * * * it is absurd to assume that the creator of the trust did not contemplate situations would arise from time to time, which would induce the legislature to change the types of legal investments because of changes in economic conditions which would render investments safe at one time, unsafe at another time. What the creator of this trust (who undoubtedly was possessed of ordinary common sense) must have believed, was that investments which were approved by the legislature or by the courts for trust funds would be more likely to be safer investments than other investments."

Where the intention of the creator of the trust is thus carried out quite obviously there is no interference with the vested rights of the beneficiaries.

In this regard it is to be noted that the Prudent Man Investment Statute expressly recognizes that the trust instrument is controlling as to 'the investment powers of the trustee (*N. J. S.* 3A:15–25). The section of the statute providing that such terms as "legal investments," "invest-

ments in which a fiduciary may by law invest," or "legal investments for trustees," shall be taken to include "limited legal investments" (*N. J. S.* 3A:15–26), does not operate to countermand the trustor's intent, but is merely an indirect way of stating that such "limited legal investments" to the extent permitted are in fact legal. For the Legislature to have labeled the investments authorized by this statute as "limited legal investments" does not make them any the less legal than the investments authorized by other statutes and labeled as "legal investments." The limitation on "limited legal investments" has nothing to do with the legality of the investments but solely with percentage of the trust which the trustee may invest therein.

Being in agreement with the trial court in its holding that the Prudent Man Investment Statute is not rendered unconstitutional by virtue of the retrospective provision thereof, we need next consider the statute as applied to the specific trusts, created prior to its enactment, of which the plaintiff is the trustee.

## THE PRICE TRUST

Thomas Price died on September 24, 1933, leaving a will dated February 24, 1928. The testator bequeathed his residuary estate in trust, with the Fidelity Union Trust Company as trustee, with directions to pay the net income to his widow Esther K. Price for her life; on her death the *corpus* to be distributed between two charities, the Orange Orphan Society and the Board of Social Service of the Diocese of Newark. As to the trustee's authority to make investments, the will provides as follows:

"SIXTH: My executor and trustee is expressly authorized and empowered to hold as part of my estate and of the trust hereby created any investments made by me in my lifetime which shall come into its hands as part of my estate and of said trust, notwithstanding they may not be such as are legal for trust investments under the laws of the State of New Jersey; nevertheless authorizing and em-

powering said executor and trustee, whenever in its judgment such action shall be either necessary or advisable for the safety or enhancement of my estate or of said trust, to sell and dispose of the same from time to time, and the proceeds of such sale or sales shall be invested and reinvested in such securities as are lawful for trust investments under the laws of the State of New Jersey."

In determining the application of the Prudent Man Investment Statute to the Price Trust, the trial court held as follows:

"Under the proper construction of the last will and testament of Thomas Price, deceased, plaintiff, Fidelity Union Trust Company, as Trustee under the last will and testament of Thomas Price, deceased, is authorized to invest in securities on the list of legals at the time the investment is made, excluding 'limited legal investments' and any investments which are qualifiedly legal."

It is the contention of Esther K. Price and the Orange Orphan Society on their cross-appeal that the trial court was correct in holding that the Prudent Man Investment Statute was not rendered unconstitutional by virtue of its retrospective provisions, but that it erred in holding that the trustee cannot invest in " 'limited legal investments' and any investments which are qualifiedly legal." They contend that the trust is governed by the statute and that the trustee may invest in any investments whatsoever provided that the aggregate value of investments not appearing on the so-called legal list do not exceed the 40% limit imposed by the statute. The Board of Social Service of the Diocese of Newark, on the other hand, takes the position that the trial court's construction of the will was correct and that the trustee's power is limited thereby to investing in securities on the legal list with no power to invest under the provisions of the Prudent Man Investment Statute.

We agree with the contention of the cross-appellants Esther K. Price and the Orange Orphan Society. Here the testator, Thomas Price, by paragraph Sixth of his will authorized his trustee to hold such investments which should come into its hands as part of the trust estate "notwith-

standing they may not be such as are legal for trust investments under the laws of the State of New Jersey," and to invest and reinvest "in such securities as are lawful for trust investments under the laws of the State of New Jersey." There is no expressed intention to fix the investment powers of the trustee with respect to the laws in effect at any particular time, and therefore, as hereinbefore pointed out, it is presumed that the testator intended that the trustee should be controlled by the statutes in effect at the time that the investment is to be made. As we have already indicated, under the Prudent Investment Man Statute a trustee is authorized to invest in securities other than those on the so-called legal list to the extent of 40% of the principal of the trust. Since such investments are plainly lawful for trust investments under the laws of this State, the trustee is therefore clearly authorized by the terms of the will to invest therein within the limits prescribed by the statute.

### The Barr Trust

By a trust indenture dated April 30, 1935, Thomas T. Barr, Jr., created a trust of which he and the Fidelity Union Trust Company were the trustees. Barr died on April 14, 1949, and since then the Fidelity Union Trust Company has been acting as the sole trustee. Article Third II of the trust indenture gave the trustees virtually unlimited investment powers so long as the settlor acted as a trustee thereunder and then provided as follows:

"After the Settlor ceases to act as Individual Trustee hereunder the corporate or surviving Trustee may retain and continue to hold, for so long as it considers such holding advisable and in. the best interests of the trust estate, any property or investments then held by it, but shall be limited in making new investments to such as shall then be legal for the investment of trust funds under the laws of the State of New Jersey and of the State of New York."

With respect to the investment powers of the surviving trustee under this indenture the trial court held:

"Under the proper construction of the trust indenture, dated April 30, 1935, executed between Thomas T. Barr, Jr., as settlor, and said Thomas T. Barr, Jr., and Fidelity Union Trust Company, as Trustees, plaintiff, Fidelity Union Trust Company, as surviving trustee of said trust, in investing the assets of said trust, is confined to such securities as were classified as legal for the investment of trust funds by the terms of the statutes of New Jersey in effect April 14, 1949."

The trustees of Rutgers College in New Jersey representing Rutgers University, the beneficiary of this trust, on their cross-appeal urge that the construction adopted by the trial court is in error, and in this we agree. By the terms of the trust indenture the surviving trustee is "limited in making new investments to such as shall then be legal for the investment of trust funds under the laws of the State of New Jersey and of the State of New York." The trial court concluded that the words "such as shall then be legal" referred back to the time when the settlor ceased to act as a trustee, but such a construction erroneously lifts the words from their own clause and carries them back to a prior clause complete in itself. In our opinion the words "such as shall then be legal" must be read in conjunction with the preceding words in the same clause, namely, to the time of "making new investments." Grammar and logic would seem to indicate that this is the preferred construction, and a reading of the entire paragraph evidences a plain intent to permit the surviving trustee to invest in such securities as may from time to time be legally authorized by statute.

For the reasons previously expressed herein, it follows that the Fidelity Union Trust Company as surviving trustee is authorized by the terms of the trust indenture to invest in such securities. as are legal under the laws of this State, which includes investments authorized by the Prudent Man Investment Statute to the extent of 40% of the trust estate. In this regard we note that as of December 6, 1951 some 58% of the *corpus* was invested in common stocks, and accordingly no funds may be re-invested under the terms of the Prudent Man Investment Statute unless and until that percentage falls below the 40% limitation.

104

## The Ross Trust

Alexander H. Ross died on May 1, 1923, and by his will, dated May 28, 1921, a trust was created with the Fidelity Union Trust Company as trustee. The will contains no provision regarding the nature or types of investments to be made. With respect to the investment powers of the trustee the trial court held:

"Plaintiff, Fidelity Union Trust Company, as Trustee under the last will and testament of Alexander H. Ross, deceased, may invest the assets of said trust in such securities as are lawful by statute at the time the investment is made, and is not limited to such investments as were lawful by statute when the will was executed, or at the time of the death of the testator.

"Plaintiff, Fidelity Union Trust Company, as Trustee under the last will and testament of Alexander H. Ross, deceased, may invest in the legal securities permitted by *N. J. S.* 3A:15–1, and, if it chooses, in limited legal investments, in accordance with the standard of care and not in excess of the percentage prescribed by the Prudent Man Investment Statute, *N. J. S.* 3A:15–18, *et seq.*"

Edith H. Ross Trowbridge, a life tenant, on her cross-appeal contends that the retrospective application of the Prudent Man Investment Statute to this trust is unconstitutional in that it deprives her of the vested right to have the principal of the trust invested as the testator intended, that the testator never intended to have the trust funds invested in securities other than those on the "legal list," and that to permit investment under the Prudent Man Investment Statute is contrary to that intent. These contentions have already been disposed of herein adversely to this appellant. Clearly where the trust instrument is silent as to the investment powers of the trustee, it is presumed that the testator intended that the trustee should be empowered to make such investments as from time to time the Legislature might authorize. Accordingly, the trustee may here lawfully invest under the terms of the Prudent Man Investment Statute subject to the limitations imposed thereby.

## THE YOUNG TRUST

One of the trusts placed in issue in this action was that created by the will of Richard R. Young. No appeal having been taken by any party with respect to that portion of the trial court's judgment dealing with this trust, no question as to the application of the Prudent Man Investment Statute thereto is presently before us.

## CONCLUSION

The judgment of the trial court is affirmed insofar as it sustains the constitutionality of the Prudent Man Investment Statute as applied to trusts created prior to the enactment thereof and insofar as it applies that statute to the *Ross* trust. The judgment of the trial court is reversed, however, insofar as it applies that statute to the *Price* and *Barr* trusts and the cause is remanded to the trial court for entry of judgment as to the *Price* and *Barr* trusts consistent with this opinion. No costs.

*For modification*—Chief Justice VANDERBILT, and Justices HEHER, OLIPHANT, WACHENFELD, BURLING, JACOBS and BRENNAN—7.

*Opposed*—None.