32 N.J. Super. 262 (1954)
108 A.2d 115
MANUFACTURERS TRUST COMPANY, A CORPORATION ORGANIZED UNDER THE LAWS OF THE STATE OF NEW YORK, AS EXECUTOR OF AND TRUSTEE UNDER THE LAST WILL AND TESTAMENT OF ELLIS POTTER EARLE, DECEASED, PLAINTIFF,
v.
THEODORE L. EARLE, ET AL., DEFENDANTS.
Superior Court of New Jersey, Chancery Division.
Decided September 29, 1954.
*263 Messrs. Smith, Slingerland, Trauth & Holtz (Mr. Elmer F. Holtz appearing), attorneys for plaintiff.
Messrs. McGlynn, Weintraub & Stein (Mr. Joseph Weintraub appearing), attorneys for defendant Olive Earle.
Mr. George Warren, guardian ad litem, pro se.
SULLIVAN, J.S.C.
Plaintiff-trustee has filed a suit asking this court to construe decedent's will. Two main questions are presented:
*264 Do the provisions of decedent's will, particularly "Article Twenty-sixth: Section 1," limit the powers of investment granted to a trustee under the Prudent Man Investment Statute, N.J.S. 3A:15-18 et seq.?
Under "Article Eighteenth" of decedent's will is the life beneficiary of the trust created under said article entitled to be paid all of the income of said trust, or are the payments to her limited to $2,000 per year?

1. WHAT ARE THE INVESTMENT POWERS AND DUTIES OF THE TRUSTEE?
As to this first question, the problem arises because of the Prudent Man Investment Statute of the State, N.J.S. 3A:15-18 et seq., which permits a fiduciary to invest up to 40% of the principal of a trust in any type of investment subject only to the prudent man standard as set forth in N.J.S. 3A:15-19. The statute, however, further says in section 3A:15-25 that "If a trust instrument prescribes, defines, limits or otherwise regulates" a trustee's powers and duties of investment, "the trust instrument shall control notwithstanding this article." To put it another way, the statute does not nor was it ever intended to countermand a trustor's instructions to his trustee as expressed in the trust instrument. Fidelity Union Trust Co. v. Price, 11 N.J. 90 (1952). In the case at hand the trustee is doubtful as to whether Article Twenty-sixth, Section 1, of decedent's will prescribes, defines, limits or otherwise regulates the trustee's powers and duties of investment within the meaning of N.J.S. 3A:15-25, supra. If it does, then the trustee may not avail itself of the liberal powers of investment under the Prudent Man Investment Statute.
Article Twenty-sixth, section 1, reads as follows:
"Section 1. It is my desire that all of the trusts herein provided for shall be set up within two years after this will shall have been admitted to probate and that the principal of each trust shall be and remain invested to the extent of at least two-thirds thereof in such securities as shall be legal investments for trust funds under *265 the laws of the State of New Jersey and/or the State of New York, and to the extent of not to exceed one-third thereof in first and/or senior preferred stocks listed on the New York Stock Exchange upon which there shall have been no default in the payment of any regular dividend when due within five years immediately preceding their acquisition."
This article definitely contains specific provisions instructing and limiting the trustee in its investment policy and particularly with regard to any deviation from "legal investments for trust funds." If there were no provision indicating the extent to which a trustee might invest in securities other than "legal investments for trust funds," it might well be that the Prudent Man Investment Statute would apply. Where, however, the decedent has in effect drafted a Prudent Man Investment Statute of his own and included it in his will, specifying in what manner and to what extent his trustee may deviate from "legal investments for trust funds" as he knew and understood that provision to mean, the provisions of the will must prevail over the statute. In the first place, decedent wanted at least two-thirds of the corpus of each of the trusts invested "in such securities as shall be legal investments for trust funds under the laws of the State of New Jersey and/or the State of New York." He further provided that not more than one-third of corpus could be invested in certain preferred stocks. The fact that decedent made a distinction between "legal investments for trust funds" and other investments, and then specified the percentage of each that the trustee was to invest in, shows that he considered one class to be "legals" and the other "non-legals." It further shows that he was fully aware of the technical meaning of the phrase "legal investments for trust funds" and used it in exactly that sense. Likewise, in authorizing some liberalization of investment holdings by his trustee, he specified in what manner and to what extent. The provisions of N.J.S. 3A:15-26, therefore, do not apply to this situation because there are express provisions to the contrary contained in the trust instrument. No one can dispute the fact that today, generally speaking, it is legal for *266 a trustee to invest in any kind of securities, and to that extent the term "legal investments" includes non-legals. Decedent, however, never understood that term to have such a broad meaning, and to try and read this latter construction into decedent's will would result in a conclusion that is almost the opposite of what decedent wrote and obviously intended. The will does anticipate that from time to time the laws relating to legal investments for trust funds may be changed, hence the use by decedent of the word "shall," which clearly indicates that the legality of investments is to be measured by the law at the time of the investment. Fidelity Union Trust Co. v. Price, supra. Likewise, it is apparent that in referring to "the laws of the State of New Jersey and/or the State of New York," the word "and" should be disregarded to give the clause the meaning intended.
To summarize, the results are:
The trustee may not avail itself of the investment provisions of the Prudent Man Investment Statute, N.J.S. 3A:15-18 et seq., and therefore may not invest in common stocks nor invest in any other non-legals except those specified in decedent's will and then only in the manner and to the extent indicated.
Preferred stock holdings, whether legals or non-legals, should not exceed one-third of corpus.
The provisions in decedent's will as to "legal investments" mean under the laws of the State of New Jersey or the State of New York.

2. IS OLIVE EARLE, THE LIFE TENANT, ENTITLED TO ALL OF THE INCOME OF THE TRUST SET UP FOR HER BENEFIT?
"Article Eighteenth" of decedent's will creates a trust for the benefit of Olive Earle. Said article provides as follows:
"I give and bequeath unto the Executor of this will the sum of SEVENTY-FIVE THOUSAND DOLLARS ($75,000), IN TRUST, nevertheless, to hold, invest, and reinvest the same, and after the deduction of all necessary and proper costs, charges, and expenses *267 against the same to pay the net income therefrom, beginning with the date of my death, in quarter-yearly instalments of FIVE HUNDRED DOLLARS ($500) each to my niece, OLIVE EARLE, for and during the term of her natural life.
In the event the net income from said trust shall be insufficient to provide for the limited quarterly payments specified by this paragraph of my will to be paid to said OLIVE EARLE, I authorize and direct the Trustee to take out of the principal of the trust the deficiency and pay the same to her so that at all times the said quarterly payments of Five Hundred Dollars ($500) each shall be made in full to the said Olive Earle. I direct that such quarterly payments shall cease with the last payment made to said Olive Earle preceding her death, and that there shall be no apportionment as to the quarter-year in which her death shall have occurred. I also direct that any and all undistributed income, together with any balance of principal then remaining in the trust shall thereupon revert to and become a part of my general estate."
At the present time the income from said trust is in excess of $2,000 per annum and Olive Earle, the life beneficiary, claims that she is entitled to be paid all of said income and not merely limited quarterly payments of $500 each. The trustee seeks instructions as to whether it should accumulate the income over $2,000 per annum or pay the same to the life beneficiary.
There is not too much difficulty in resolving this question. Article Eighteenth of decedent's will can only mean one thing and that is that Olive Earle is to be paid limited quarterly payments of $500, no more and no less. Any surplus income is to be accumulated by the trustee. While it is possible to argue that the life tenant is entitled to all of the income from said trust because Article Eighteenth does provide "to pay the net income therefrom * * *," such an interpretation cannot possibly be reconciled with the remaining provisions of said article. For example, it goes on to state that the income is to be paid "in quarter-yearly instalments of Five Hundred Dollars ($500) each." The next paragraph of said article provides that if the income is insufficient to provide for "the limited quarterly payments specified," resort may be had to principal "so that at all times the said quarterly payments of Five Hundred Dollars ($500) each shall be made in full." *268 Finally, said article provides for the disposition of all undistributed income and the balance of the principal upon the death of the life tenant. No doubt decedent could have expressed himself in a clearer manner. His intent, however, is manifest. Olive Earle's claim to all of the income can only be sustained by taking one small phrase out of context and disregarding numerous subsequent provisions which interpret and limit that phrase. Her contention that "limited quarterly payments" really means "unlimited quarterly payments" is the best indication of how far one has to go to support her position.
A study of the entire will discloses a comprehensive, well organized and well executed testamentary plan. There are several trusts set up under said will where the decedent expressly provided that the entire income from the trust was to be paid to the beneficiary in quarterly installments. The fact that he made a different provision in the Olive Earle trust and expressly limited the amount of the payments plainly indicates that the trust plan for Olive Earle was different than these other trusts. Were it not, he would have used the same language.
Again, to summarize, the results are:
Under Article Eighteenth of decedent's will payments to the life beneficiary are limited to quarter-yearly installments of $500 each and the life beneficiary is not entitled to be paid any surplus income.
For the present the trustee is to accumulate surplus income from said trust as an uninvested reserve in cash.
An appropriate form of judgment should be presented.