# Richmond

GEORGE McGREGOR GOODRIDGE, JR., ET AL., ETC. v. NATIONAL BANK
OF COMMERCE OF NORFOLK, ETC., ET AL.

January 26, 1959.

Record No. 4870.

Present, Spratley, Buchanan, Miller, Whittle, Snead and I'Anson, JJ.

The opinion states the case.

*Luther W. White, III* (*Worthington, White & Harper*, on brief),
for the appellants.

*Charles L. Kaufman*, for appellees, National Bank of Commerce
of Norfolk and Charles L. Kaufman, Trustees.

BUCHANAN, J., delivered the opinion of the court.

This appeal raises the question of whether the Virginia prudent
man investment statute enacted in 1956, Acts 1956, ch. 660, Code

1950 as amended, § 26-45.1,* may be applied to two trusts created prior to 1956. No disputed fact is involved.

By indenture dated December 12, 1940, Harry B. Goodridge transferred and delivered certain securities to National Bank of Commerce of Norfolk, trustee, on the irrevocable trusts stated in the instrument. The trustee was expressly authorized and empowered "To take title to, purchase, invest and reinvest in any bonds, stocks, notes, mortgages or other securities that are eligible for the investment of fiduciary funds under the laws of the State of Virginia."

By his will dated February 6, 1951, the said Harry B. Goodridge devised and bequeathed to National Bank of Commerce of Norfolk and Charles L. Kaufman, trustees, certain property in trust for the purposes stated in the will, and with authority to the trustees "To purchase and invest and reinvest in any bonds, stocks, notes, mortgages or other securities that are eligible for the investment of fiduciary funds under the statute laws of the State of Virginia."

Goodridge died July 28, 1952, and his will was probated August 4, 1952.

The Bank as trustee in the trust indenture, and the Bank and Charles L. Kaufman as trustees under the will, filed separate suits

---

* Section 26-45.1 provides in substance as follows:

(a) Except with respect to the securities described in §§ 6-184 and 26-40, trustees or other fiduciaries in selling and managing property and making investments, shall exercise the judgment and care, under the circumstances then prevailing, "which men of prudence, discretion and intelligence exercise in the management of their own affairs, not in regard to speculation but in regard to the permanent disposition of their funds, considering the probable income as well as the probable safety of their capital." Within the limitations of the foregoing standard, a trustee or other fiduciary is authorized to acquire and retain every kind of property and every kind of investment, including debentures and other corporate obligations and stocks, preferred or common, and other described securities, which men of prudence, discretion and intelligence acquire or retain for their own account.

(b) Nothing in the section shall be construed as authorizing any departure from, or variation of, the express terms or limitations set forth in any instrument or court order creating or defining the duties and powers of a trustee or other fiduciary, but the terms "legal investment" or "authorized investment" or words of similar import in such instrument shall be taken to mean any investment pemitted by the terms of paragraph (a).

(c) Nothing in the section shall be construed as restricting the power of a proper court to permit a fiduciary to deviate from the terms of any will or other instrument relating to the acquisition, investment, sale or management of fiduciary property.

(d) The provisions of this section shall govern trustees or other fiduciaries acting under wills, agreements, court orders and other instruments now existing or hereafter made.

which were consolidated and heard together, in which they referred to the 1956 Act and expressed the belief that the quoted provisions of the indenture and of the will authorized the respective trustees to invest the corpus of the respective trusts in accordance with the statutes relating to the investment of fiduciary funds as they existed at the time of the investments, and they sought the guidance and ruling of the court in that respect. The interested parties were convened and no trust beneficiary took issue with the expressed views of the trustees except that the duly appointed guardian ad litem for the infants and unknown and unborn beneficiaries answered and contended that the trustees should be limited in their investments to securities which qualified under the statutes as they existed when the trusts were created; *i.e.*, in respect to the indenture § 26-40 of the 1950 Code as amended, listing the securities in which fiduciaries might invest, and with respect to the will said § 26-40 and § 6-184, the latter enacted in 1946, Acts 1946 at page 758, admitting shares of certain associations.

After a hearing the decree appealed from was entered adjudicating that the provision of paragraph (d) of § 26-45.1 making it applicable to fiduciaries acting under "instruments now existing or hereafter made" was not constitutionally objectionable, and that investments made in accordance with that section would not constitute any departure from or variation of the express terms or limitations contained in either of the aforesaid instruments. Accordingly the respective trustees were authorized to acquire investments which qualified under the prudent man rule as defined in said § 26-45.1.

The guardian ad litem appealed and assigned error under which he contends that if § 26-45.1 is applied to the trusts here involved, both of which were created before that section was enacted, then it is unconstitutional. He argues with respect to the *inter vivos* trust that the settlor made a contract with the trustee which was governed by the statutes in effect at the time of its execution; that it is not to be presumed that the settlor anticipated that the statutes regarding investments might be afterwards changed from time to time and therefore acquiesced in the type of investments which might later be permitted by statute; but that the presumption should be that the settlor had in mind only the "legal lists" of investments for fiduciaries which the statutes at that time enumerated. Hence, he says, to permit the prudent man statute to apply would impair the obligation of the

contract, which is forbidden by both State and Federal Constitutions.

He concedes that the will was not a contract, but he says that under it the beneficiaries of the trust took vested rights; that the application of the subsequently enacted prudent man statute changes the effect of the will and divests the beneficiaries of their vested rights in violation of the Fourteenth Amendment.

Similar arguments were made and rejected in *Fidelity Union Trust Co.* v. *Price*, 11 N. J. 90, 93 A. 2d 321, 35 A.L.R. 2d 980, in which the New Jersey prudent man investment statute was construed and applied. The New Jersey statute authorized fiduciaries to invest up to 40 per cent of the corpus of the estate according to the prudent man rule, and § 12 of that statute made it applicable to "trust instruments heretofore and hereafter made," just as paragraph (d) of the Virginia statute makes it applicable to trust "instruments now existing or hereafter made." In the opinion by Chief Justice Vanderbilt it was said that the prudent man statute had the effect of expanding the types of investments which a fiduciary might legally make and that now as heretofore a trustee in making investments of whatever type must exercise that degree of care and judgment which persons of ordinary prudence and reasonable discretion exercise in the management of their own affairs. As to the constitutionality of the retrospective provision of the statute he wrote:

"Further, it is plain that the provision of the statute making it applicable to prior created trusts is not constitutionally objectionable. The statute as thus applied in no way impairs the obligation of any contract or interferes with or alters any vested right or legal remedy that antecedently existed. * * Unless the trust instrument provides otherwise, it is presumed that the trustor intended that his trustee should have the power to make such investments of the corpus of the trust as the Legislature in its wisdom might from time to time permit. * *."

Then from the earlier case of *Reiner* v. *Fidelity Union Trust Co.*, 126 N. J. Eq. 78, 8 A. 2d 175, where the trust agreement gave the trustee power to invest the proceeds from the redemption of certain stock " 'in such securities as are by the laws of the State of New Jersey designated as legal investments for trust funds,' " he took this quotation which is equally applicable to the present case:

" 'To interpret the language of this trust instrument as requiring that the trust funds should be invested only in securities which were

legal investments for trust funds at the time of the creation of the trust is to attribute to the creator of the trust a complete lack of ordinary intelligence . . . it is absurd to assume that the creator of the trust did not contemplate situations would arise from time to time, which would induce the legislature to change the types of legal investments because of changes in economic conditions which would render investments safe at one time, unsafe at another time. What the creator of this trust (who undoubtedly was possessed of ordinary common sense) must have believed, was that investments which were approved by the legislature or by the courts for trust funds would be more likely to be safer investments than other investments.' "

"Where the intention of the creator of the trust," adds Judge Vanderbilt, "is thus carried out quite obviously there is no interference with the vested rights of the beneficiaries."

In the Annotation to the *Price* case, 35 A.L.R. 2d beginning at page 991, it is pointed out that courts have generally held that the propriety of a trust investment is to be determined by the terms of the statute in effect at the time when the investment is made, and not at the time when the trust was created, except where the language of the trust instrument limited the trustee to certain investments; and it is said:

"In the rare instances in which the question was raised it has been held that provisions making a trust investment statute applicable to trusts created prior to its enactment are not violative of the constitutional prohibition against impairment of the obligation of a contract."

It is common knowledge that economic conditions and property values change frequently and what was a safe investment in 1940 or 1951 may be an unsafe and unwise investment in 1959. It is not to be presumed, in the absence of such a purpose expressly stated in or necessarily to be inferred from the trust instrument, that a trustor intended that the trustee should invest only in securities permitted by the statutes in effect at the time the trust was created. There is nothing in the trust instruments in the present case to indicate, as could readily have been done if desired, that the trustor intended to restrict investments to those enumerated in the statutes in effect at the time of the execution of the instruments. In such case it is the natural and legal presumption that the trustor intended that the trustees could make such investments as were lawful and

proper under the statutes in effect at the time the investments were made.

To give effect to such intention impairs no contract and takes away no vested property right.

The decree appealed from correctly decided the question and it is therefore

*Affirmed.*