*413
 
 Ruffin. C. J.
 

 Although the point seems to present but little difficulty, yet it is not worth while to consider what effect, if any, the endorsement of Bowman’s bond to John Nelson could have on the devises and bequests to him» had the endorsement been an effectual transfer of the bond ; because the Court is of opinion, that the bond was not transferred, for want of a delivery to the son or to some one for him. In Bay ley on Bills 9S, it is said, that bills or notes are assigned either by delivery, or by endorsement and delivery; and that is adopted by Byles 110. In several modern cases, the same doctrine has been judicially' held. In
 
 Marston
 
 v.
 
 Allen,
 
 8 M. & W. 484, one Harriss, an officer of a bank, endorsed a bill in blank, and delivered it to another servant of the bank, to be kept as the property' of the bank ; but he.
 
 mala
 
 fide, passed it to the plaintiff, who sued the acceptor on it; and upon a plea, that Harriss did not endorse the bill to the plaintiff, it was held that the endorsement, actually appearing on the bill, was not legally an endorsement, that would transfer the bill to the plaintiff, because it was not completed by the requisite delivery from Harriss to the plaintiff inasmuch as his delivery was to his fellow servant for a particular purpose, in fraud of which the plaintiff obtained the bill from that person. But the previous case of
 
 Brind
 
 v.
 
 Hampshire,
 
 1 M. & W. 365, is yet more in point. It was trover for a bill of exchange, endorsed by one Usher to the plaintiff’s wife, in payment of a debt from Usher to her. It was remitted by Usher to the defendant, his agent, who got the bill accepted, and advised Mrs. Brind that he was directed by Usher to pay her some money, and-desired to be informed how it should be delivered. But, before he parted from the bill, he was instructed by Usher to keep it, and not deliver it to the plaintiff or his wife ; and for that reason he kept the bill and refused to deliver it. The pleadings were drawn out to a sur-rejoinder, to which there was a de
 
 *414
 
 murrer, on the ground, that it was admitted thereby, that the defendant was the agent of Usher, and that the bill remained in his hands the same as in Usher's, endorsed, but not delivered, to Mrs. Brind, and. so, no property in the bill vested in her or her husband; and there was judgment for the defendant thereon. It was insisted for the plaintiff, that it was not competent to the defendant to say he did not hold the bill for the person to whom it was specially endorsed and was to be delivered in payment of a debt; especially after having got it accepted with the endorsement on it, and given notice to the plaintiff. But the Court did not think those circumstances changed the character, in which the defendant stood to the parties and held the bill, as the agent, namely, of Usher; and therefore that there was no transfer of the property in the bill. Inthe beginning of the argument, the plaintiff’s counsel contended that he ought to recover, because the bill was endorsed to the plaintiff’s wife, and that passed the right to the plaintiff; and that, in the case of a special endorsement to a particular part}, it was not necessary to aver a delivery or shew one. But Baron Parke replied, that it was not necessary to aver the delivery specially, because it was implied in the allegation of endorsement; yet that a delivery to the endorsee was necessary to pass the bill. And Lord Abinger puls the very case now before us. by supposing that Usher, after endorsing the bill, had kept it in his own possession ; and he asked, would the plaintiff have any property in it ? It is clear he held, that he would not, for he gave judgment for the defendant, because, he said, the case, as to him, was exactly the same as if Usher had carried the bill for acceptance, after endorsing it to the plaintiff, and afterwards renounced his intention of paying it over to the party, whose name he had endorsed on it. The same principle is deducible from the two other cases of
 
 Adams
 
 v.
 
 Jones,
 
 12 Adol. & El. 455, and
 
 Williams
 
 v.
 
 Everett,
 
 14
 
 *415
 
 East 582. It seems therefore established, that, even by a full endorsement, a note or bill is not transferred to the endorsee, if the endorser keep it in his own possession ; nor, indeed, is the property passed by such endorsement, though the bill be sent to the agent of the endorser for the purpose of handing it to a creditor of the endorser as a payment, provided the delivery be countermanded before its completion. The present case is much stronger against the immediate and absolute operation of the endorsement; since the endorser never parted from the possession of the instrument, but it was merely voluntary, and it is perfectly certain the father did not intend that his son John should have the whole proceeds oí the land sold, and also have an equal share with his two brothers in that which remained unsold: and, therefore, he never would have delivered the bond to John, while his will continued unaltered, since that inequality would have been the consequence. No doubt, he intended to alter his will so as to preserve the original equality, in point of value, in the provision made for his sons, and in that event he would have, probably, delivered the bond to John or bestowed it on him in his will. But death followed so speedily, that he did not carry out those purposes; and, under such circumstances, it cannot be inferred. that the father intended to give up the control of the bill, and the property in it to pass immediately. It must therefore be declared, that the bond did not vest in John Nelson, but belonged to the testator at his death, and forms a part of the residue of his estate, and is applicable, as such, to the payment of the debts and general legacies.
 

 If there should be a deficiency of assets, not otherwise disposed of, for the satisfaction of those legacies (amounting in the aggregate to
 
 $760,)
 
 they must necessarily abate among themselves,
 
 pro rata.
 
 Devisees or specific lega
 
 *416
 
 tees are, under no circumstances, liable to contribution towards making up general legacies of any kind.
 

 As all the negroes arc given specifically, the respective donees are entitled to the profits arising from, or liable for the charges incurred for, the several negroes, which constitute their legacies respectively. It is assumed from the pleadings, that the executor justifiably withheld his assent to the legacies, pending the suit by the widow, and that he acted
 
 bona fide
 
 in hiring and maintaining the slaves. Of course, then, the incidents of profits and losses must go with the principal, that is. the slaves, which are the subjects of the gifts. For example, the expense of maintaining the woman, Leah, and her family is stated to have been $329 75 ; but there are now four children besides the mother, and it is nothing but right, that the increase and the outlay should go together.
 

 Upon the remaining question, as to the construction oí the clause disposing of any increase Leah should have, the Court is unable to form an opinion, as clear and satisfactory as is desirable, inasmuch as the intention is imperfectly and vaguely expressed. But after considering it a good deal we have been led to conclude, that the testator meant therein only such issue as'the woman might thereafter have in his lifetime. In the. first place, it is the natural construction, that a will refers to the death of the testator, as much in reference to the subject of the gift as in reference to the donees.
 
 Now, it
 
 is
 
 well settled,
 
 that a legacy to the issue or children of another, when no time is fixed for a division, vests in those
 
 in esse
 
 at the death of the testator, to the exclusion of
 
 thepost-uali;
 
 for, as the legacy is immediate, it vests and is divisible at the same time, which is the death of the testator, although the words may be, “to the, children of A. begotteii or tobe begotten.” The English cases on this point are collected in 1 Roper on Legacies 48,
 
 ct seq ;
 
 and the caso
 
 of Petway
 
 v.
 
 Powell,
 
 2
 
 Dev. &
 
 Bat. Eq. 308, and several
 
 *417
 
 others in this Court were decided on that principle. So it would seem likewise, that, when the children of a particular female slave are given separately from the mother to one set of donees, and the mother is given to another, and no time is specified within which the children are to be born, and they are not given as the first or second child, but as children generally, it must, upon the same principle follow, that all such as may have been born before the death of the testator, and be then
 
 m esse,
 
 are included, except those that may be specifically disposed of to some other person ; and that none are included but such as may have come into being in the testator’s lifetime. Besides the analogy between the two cases to which the rule is thus applied, other reasons lead to the same conclusion, ‘It is difficult to suppose that a testator, and especially a father, in providing for a daughter by the absolute and immediate gift of a negro woman, could m’ean, that she should be at all the expense of providing for the mother during her pregnancies and confinements after child-birth, and yet give away two thirds of the offspring — almost the only profit of such slaves_ which she may' have in the course of her whole life. It would destroy the value of the gift, and, in effect, render the negro inalienable. Again, the issue is to vest in three daughters, if at all, when and as it comes into existence ; and it is most unnatural, that the testator should have intended, on the one hand, that the infants should be immediately taken from the mother, and not reasonable, on the other hand, that the owner of the mother should be obliged to keep the children for the other owners, until it should be fit to separate them from the mother. No doubt, a testator may give the mother to one and her first or second child or, even all her children, as they may be born during ber life, to some one else. But to effect that, there ought to be words plainly denoting the meaning-to be, that the child or children should pass, whether bora
 
 *418
 
 after as well as before the vesting in possession of the mother. That cannot, be gathered from a gift simply of the children, when the mother is absolutely and immediately disposed of in the will; for that term
 
 may be
 
 satisfied by the children born at the making of the will or before the death
 
 of
 
 the testator, and the
 
 gift
 
 of the mother includes the children born after the gift takes effect, unless the contrary be plainly provided for. It is true, that in this case the terms are prospective, so as to embrace only “the increase” of Leah, “if there should be any;” ytt the reason is the same for restricting the sense to such future children as should be born in the lifetime of the tes. tator, as it would be for not including the children born after his death, if the terms children, or issue generally had been used. On these grounds the Court holds, that all the children of Leah, which have been born since the testator died, belong to the daughter Elizabeth.
 

 Per Curiam.
 

 Decree accordingly.