Battle, J.
 

 This is a petition to rehear a decretal order made in this cause, at the December Term, 1851, of this Court. The parts of the decree complained of, are those wherein the Court declares, “ that, the codicil to the will of 1831, set forth in the “ pleadings, and exhibited in the cause, operated so as to revoke “such of the provisions of the will providing for the emancipa-ron of the slaves, as might have been lawfully carried into ex- “ ecution, inasmuch as it provided for their residence in this State, “ in a condition and state contrary to our laws and policy
 
 ;
 
 and “ thereupon adjudges that the negines Patsy, Harriet, Freeman “and William Henry Morris, were still slaves, and belonged to “ the estate of said testator, and with their increase, if any, were “to be accounted for by the defendants as executors:” And wherein the Court further declares, “ that the said bequests for “the emancipation of the said slaves being .void, they belonged “ to the plaintiffs, who are the next of kin ; and that the devises “ and bequests of property of every kind, both real and personal, “ in said will to said slaves, or in trust for their benefit, were void:
 
 *113
 

 “
 
 and resulted to the said heirs at law and next of kin of said tes-
 
 cc
 
 tator, and that the same; with the profits and interest accrued
 
 <c
 
 and accruing thereon, were to be accounted for by these de- “ fendants, as trustees, to and With the said plaintiffs.”
 

 The questions raised upon the petition to rehear have been elaborately argued before us by the counsel on both sides. We have given to the arguments a full and mature consideration, but yet without being able to discover in the decretal order any error of which the petitioners have a right to complain. A will is an instrument by which a person makes a disposition of his property, to take effect after his decease
 
 ;
 
 and which is, in its own nature, ambulatory and revocable during his life. Jarman on Wills, 11. A codicil is a supplement to a will, or an addition made by the testator, and annexed to, and to be taken as a part of, a testament— being for its explanation, or alteration, or to make some addition to, or substraction from, the former disposition of the testator. 2 Black. Com.
 
 500 ;
 
 Williams onEx’rs. 8. In the construction of wills, the leading and controlling object is to ascertain the intention of the testator
 
 ;
 
 and in order to accomplish this purpose, technicalities may be disregarded, and irregularities of form overlooked, The same rule applies to a codicil, so far as the- construction is confined to itself; but so far as it affects the will to ivhich it is a supplement, the rule is, that it may vary, by adding to, or taking from the will, but it is not wholly to supplant it. Jarman on Wills, 160. In the construction of wills, it is said too, that there is a difference between inconsistent provisions when found in the body of the will itself, and when found in the will and codicil, arising from the fact that in the former case, both provisions have operation from one and the same act of publication, while in the case of the will and codicil, the. provisions contained in the codicil necessarily modify or revoke those inserted in the will. But it is contended for the petitioners, that here the will and codicil were proved as a will only ; that the decision of the probate Court is conclusive, as to that fact upon the Court, of construction
 
 ;
 
 and that, therefore, they arc to be construed as one instrument. However this may be in England, or in other cases in this State, as to which we do not determine, we do not see how we can, in this" case, overlook the fact that the testator himself calls the second
 
 *114
 
 instrument a codicil,; the bill states it to be a codicil, and the defendants in their answer admit that it is so. But, notwithstanding this, we agree with the counsel that the plain intent, apparent in the will, that the slaves should be sent abroad to be emancipated, ought not to be defeated by any doubtful intent, that they should reside in this State, to be extracted from the codicil. We agree with him further, that where two intents appear in the same instrument, one lawful and the other unlawful, the former is to be adopted. But we cannot apply the rule to a case, where the intention, if a plain one, is contained in an instrument whose office it is to vary a former one. We agree still further with the counsel, that a testator is to be presumed to know the law of the country ; but we cannot say that, if so knowing it, he manifestly attempts to evade-it, his unlawful attempt is to be overlooked, for the purpose of carrying out a previously expressed lawful intention. Such a rule would have saved the Court from the disagreeable necessity of deciding the cases of
 
 Haywood
 
 v. Craven, 2 Car. Law Repos. 557,
 
 Pendleton
 
 v. Blount, 1 Dev. & Bat. Eq. 491,
 
 Lemmonds
 
 v.
 
 Peoples,
 
 6 Ire. Eq. Rep. 137, and
 
 Sorrey v.
 
 Bright, 1 Dev. & Bat. Eq. Rep. 113: all which were attempts to set slaves free, in evasion of the settled policy and laws of the State.
 

 With these admissions, we proceed to the inquiry whether the codicil, in the case under consideration, discloses a clear, plain, unmistakable .intention of the testator, that his slaves should, notwithstanding his declared purpose to emancipate them, continue to reside in this State. The counsel for the petitioners contends that he does not; that the only term used by him, which creates any difficulty, is the word
 
 u
 
 occupy,” and that that word does not necessarily mean what is technically called a
 
 possessio pedis.
 
 We think the counsel has succeeded in showing, that it is barely possible the testator might' have intended the slaves to reside abroad, while enjoying the benefit of the property devised and bequeathed to them. He certainly hás not succeeded beyond showing such a possibility. But we do not consider that to be the rule for ascertaining a testator’s intentions. Ordinary words found in a will are to be taken in their ordinary acceptation. Technical terms are to be understood in their technical sense, un
 
 *115
 
 less the context shows that the testator os.ed them in a different sense. Here the testator gives a certain piece of ground, with the improvements, in the town of Newbern, his household and kitchen furniture, and his cow and calf, and ten shares of stock in the Merchants’ Bank of Newbern, to the petitioners, to be held in trust
 
 “
 
 to permit his woman Patsy to use, occupy and enjoy the
 
 “
 
 said piece of ground and said furniture, and cow and calf, and “ to have the dividends of the said Bank Stock, during the natu-í£ ral life of the said Patsy,” &c. He then directs certain other lots to be sold by his executors, and of the proceeds of the sale, lie bequeathed to William Henry Morris, a son of Harriet, and grandson of Patsy, one thousand dollars. We ask seriously, whether one man out of a hundred would suppose that Patsy, a woman, was intended by the testator to reside in Pennsylvania, or any of the other free States, and yet “ use, occupy and enjoy a !£ house and lot, household and kitchen furniture, and a cow and “ calf, situated in the town of Newbern in this State.” We answer confidently, that he would not. Nor will it help the construction, to say that the trustees were bound to sell the cow and calf, for the reason that they were given to Patsy for life only, with remainder over to her children. We cannot presume that the testator intended a sale ; because, if so, we cannot see why he did not expressly direct it, as he did with regard to the lots out of which William Henry Morris’s legacy was to be paid, and as he did with regard to all his estate in his will. We are bound, therefore, to declare our opinion to be, that the testator intended Patsy to reside in the town of Newbern, and there to occupy tjie house and lot, and use and enjoy the furniture, and the cow and calf.
 

 But the counsel for the petitioners contends that, supposing this to be the proper construction with regard to Patsy, it does not apply to her children, Harriet and Freeman, and her grandchild William Henry Morris.
 

 If the clauses in the codicil, relating to the children, had been separate and distinct from those which apply to their mother, we might perhaps be justified in putting a construction upon it more favorable to them. We admit that the terms employed by the testator do not so necessarily imply a residence in this State, as in
 
 *116
 
 the case of the mother. But neither the will nor codicil any where shows an intention that they should be separated from their mother, and we think, that as the testator has evinced a disposition to evade the law of the State in relation to her, there ought something to appear in the codicil, that he wished their fate to be different from hers. In the absence of any such intention disclosed by either instrument, we feel bound to hold that the testator meant that the children should reside with their mother, in the town of Newbem. That being so, the result is, that the bequest for emancipation has failed, and the slaves mentioned in the pleadings, together with the property devised and bequeathed in trust for them, belong to the heirs at law and next of kin, and the petitioners must account for them accordingly.
 

 We must declare that there is no error in the decretal order in the matters alleged, and the petition must be dismissed with costs.
 

 Per Curiam. Petition dismissed,