WACHOVIA BANK & TRUST COMPANY, EXECUTOR OF HATTIE L. PEPPER v. NANNIE E. DODSON, EXECUTRIX OF LIZZIE PEPPER (MRS. J. C.) DODSON, WACHOVIA BANK & TRUST COMPANY, EXECUTOR OF J. C. DODSON, NANNIE E. DODSON, AGNES V. DODSON, JAMES R. DODSON, JOHN C. DODSON, DELLA DODSON (MRS. CLYDE O.) CROWELL, WACHOVIA BANK & TRUST COMPANY, ADMINISTRATOR C.T.A. OF MARJORIE DODSON HAMNER, ELIZABETH HAMNER (MRS. W. DEANE) TAYLOR, NANNIE E. DODSON AND AGNES V. DODSON, EXECUTRIXES OF NELLIE DODSON BOYD, L. L. LEVINSON, ADMINISTRATOR OF MRS. N. A. MARTIN, LOUISE PEPPER McCLUNG, EXECUTRIX OF T. R. PEPPER, LOUISE PEPPER McCLUNG, FRANCIS D. PEPPER, HIERO L. TAYLOR, BETTY T. WEBB, MALLIE D. PEPPER, EXECUTRIX OF THOMAS OTTO PEPPER, LELIA JOYCE PEPPER (MRS. W. W.) MALONEY, THOMAS I. PEPPER, PHILIP E. LUCAS, ANCILLARY ADMINISTRATOR OF JOHN BOLT PEPPER AND ALTON DONNIE DOUGLAS, ANCILLARY EXECUTOR OF ANNA PEPPER (MRS. A. P.) DOUGLAS.

(Filed 19 July 1963.)

1. **Wills § 27—**
     A will speaks as of the death of testator.

**2. Wills § 28—**

A codicil is a supplement to a will and is to be construed with the will as constituting but a single instrument.

**3. Wills § 27—**

A will and codicil thereto must be construed together to ascertain the intent of the testator as expressed in the language of the instrument interpreted, in case of ambiguity, in the light of the conditions existing at the time the will was made and at the time the codicil was made.

**4. Wills § 57—**

A specific legacy is a bequest of a particular chattel, or money in a particular place, or a particular corporate stock or particular bond or other obligation for the payment of money, so that the thing bequeathed is, by the terms of the will, distinguishable from all others of the same kind; a demonstrative legacy is a bequest of fungible goods payable out of or charged upon a particular fund, and not so described as to be distinguishable from others of the same kind.

**5. Same—**

From a consideration of the will and the codicil thereto, construed together as a whole, it *is held* that the bequests to designated legatees of a specified number of shares of stock in a tobacco company were specific and not demonstrative bequests and the specific legatees are entitled to all stock dividends and stock splits accruing after the death of testatrix.

**6. Wills § 34—**

A bequest of the income from stock for life to designated beneficiaries with provision that upon the death or marriage of both of the said life beneficiaries the stock, in a designated number of shares, should go to named beneficiaries, transfers to the ultimate beneficiaries a present fixed right of future enjoyment.

**7. Wills § 42—**

A bequest of a specified number of shares of stock to each of the children of testatrix' sister is subject to be opened up to make room for any children thereafter born to testatrix' sister.

**8. Wills §§ 38, 57— Bequest of whole of income not exceeding specified amount held not to vest income in excess of specified amount in legatee.**

Testatrix bequeathed all of the income from the remainder of the estate to two designated beneficiaries with provision that, upon the death or marriage of either, the survivor should be entitled to the whole of the income not exceeding a stipulated amount per year. Stock constituting a part of the remainder of the estate was thereafter bequeathed by specific bequest to named beneficiaries. *Held:* The entire income was given the designated beneficiaries during the term of their joint lives or nonmarriage and the specific legatees were entitled to no part thereof, but upon the death of one of the life beneficiaries the income in excess of

$1200 per year did not vest in the other and the estate of the survivor is not entitled thereto, but the specific beneficiaries are entitled to that part of the excess over $1200 per year that was derived from the stock specifically bequeathed to them.

**9. Wills § 70—**

In an action to construe a will it will be presumed, unless it appears to the contrary from the record, that the order of the court that all costs of the action including reasonable counsel fees and costs of administration be paid from the accumulated income of the estate, if sufficient, was entered in the exercise of the court's discretion, and the order will not be disturbed in the absence of a showing of abuse.

APPEAL by Alton Donnie Douglas, Ancillary Executor of the estate of Anna Pepper (Mrs. A. P.) Douglas, deceased, from *Martin, S.J.,* 16 April 1962 Civil Term of FORSYTH.

Proceeding under Declaratory Judgment Act, G.S. 1-253 *et seq.,* for construction of the will and codicil thereto of Hattie L. Pepper, deceased.

Hattie L. Pepper, a spinister and registered nurse, residing in Forsyth County, died testate 12 August 1928, leaving a will dated 7 April 1927, and a codicil thereto dated 12 June 1928, both of which were duly admitted to probate.

She had two brothers, T. R. and J. G. Pepper, and four sisters, Lizzie Pepper (Mrs. J. C. Dodson), Nannie Pepper, Anna Pepper (Mrs. A. P. Douglas), and Mrs. N. A. Martin.

This is a summary of her will, except when quoted verbatim:

Item First provides for the payment of her funeral expenses and debts.

Item Second. In this item she devises her one-eighth interest in a farm in Stokes County to her two sisters, Mrs. J. C. Dodson and Nannie Pepper, share and share alike, with the exception that she reserves the minerals on this farm, and devises them to her three sisters, Mrs. J. C. Dodson, Nannie Pepper and Mrs. A. P. Douglas, share and share alike.

"THIRD: I give and bequeath to my sisters, Mrs. A. P. Douglas and Miss Nannie Pepper during their life time or until marriage, all the income derived from the remainder of my estate, of whatsoever nature and wheresoever situate, and I direct my Executor hereinafter named to divide this fund equally between them quarterly. Upon the death or marriage of either, the survivor shall be entitled to the whole of said income, but not exceeding $1,200.00 per year.

"FOURTH:   Upon the death or marriage of both of my said sisters, Mrs. A. P. Douglas and Miss Nannie Pepper, I give and bequeath to my sister, Mrs. J. C. Dodson, seventy-five shares of my Common B Stock of the R. J. Reynolds Tobacco Company and I give and bequeath to the children of Mrs. J. C. Dodson (there being seven living at this time), seven shares each of my Common B stock of The R. J. Reynolds Tobacco Company.

"FIFTH:   All of the rest and residue of my estate, not hereinbefore devised and bequeathed, of whatsoever nature and wheresoever situate, I give, devise and bequeath to my Brothers and Sisters, Mrs. N. A. Martin, Mrs. J. C. Dodson, T. R. Pepper, Miss Nannie Pepper, J. G. Pepper and Mrs. A. P. Douglas, in equal amounts, share and share alike; provided, however, if anyone or more of my said Brothers and Sisters should have predeceased me leaving issue, such issue shall receive the share which its, or their, parent would have received if living; and this provision applies equally in case any of the Dodson children, above mentioned, should predecease me."

Item Sixth appoints Wachovia Bank and Trust Company as executor of her will.

This is her codicil to her will:

"FIRST:   I hereby alter section 'Fourth' of said will by adding in said section my brother-in-law, J. C. Dodson, to whom I give and bequeath twenty-five shares of my Common B Stock of the R. J. Reynolds Tobacco Company. This out of love and affection for him, and in appreciation of his kindness to me.

"SECOND:   I hereby alter section 'Fifth' of said will as follows: Two-thirds of all the rest and residue of my said estate I give, devise, and bequeath to my sister, Mrs. J. C. Dodson. The remaining one-third I give, devise and bequeath to my brothers and sisters, Mrs. N. A. Martin, T. R. Pepper, Miss Nannie Pepper, J. G. Pepper and Mrs. A. P. Douglas, in equal shares as set forth in Section 'Fifth' of said will.

"THIRD:   I hereby alter section 'Sixth' of my said will as follows: I declare it to be my earnest desire that my Executor shall not dispose of any of my estate, consisting principally of R. J. Reynolds Tobacco Company's stock and other securities, during the lifetime of my sisters, Nannie L. Pepper and Mrs. A. P. Douglas, unless the dividends of said stocks or securities should become impaired so that they cease to be a sound invest-

ment. In which event I hereby empower my said Executor to sell said stocks or securities, and reinvest the proceeds in other stocks or bonds as they may determine to be for the best interest of my estate.

"FOURTH: I have pledged as collateral security to the account of Nannie Pepper forty shares of my Common B stock of the R. J. Reynolds Tobacco Company, and Six Thousand Dollars ($6000) in cash, which shall remain as collateral to said account for a period of six (6) months from this date, or unless said account shall be terminated sooner. This stock and money is being attended to by my agent, J. C. Dodson, and I direct that it shall so remain in his sole charge until said account is closed. When said account is closed up, the said forty (40) shares of stock and Six Thousand Dollars ($6000) shall be returned to my estate, and the profits from said transaction, if any, shall be paid by my said agent to the said Nannie L. Pepper.

"FIFTH: Subject to these changes I hereby expressly reinstate my last Will and Testament made on the 7th day of April 1927."

The Wachovia Bank and Trust Company, executor of Hattie L. Pepper, hereafter called Wachovia, from the date it qualified as her executor to the date of the death of Nannie Pepper, unmarried, on 30 January 1945, in accord with the provisions of her will, paid all net income derived from her estate to Nannie Pepper and Mrs. A. P. Douglas in equal shares; that from the death of Nannie Pepper until the death of Mrs. A. P. Douglas on 20 March 1961, in accord with the terms of her will, it paid from the net income of her estate the sum of $1,200.00 a year to Mrs. A. P. Douglas.

Hattie L. Pepper, at the time of her death, owned 575 shares of Common B stock of R. J. Reynolds Tobacco Company; the executor in December 1928 sold 220 shares of this stock leaving 355 shares in her estate. In March 1929, this stock was split at 2½ for each share and the estate then held 887½ shares; the executor bought ½ share making a total of 888 shares. In 1930 it sold 30 shares leaving a total of 858 shares of this stock. In 1959 this stock ceased to be known as Common B stock and became common stock. In 1959 this common stock was split two shares for one, making a total of 1716 shares held by the estate of Hattie L. Pepper at the time of the death of Mrs. A. P. Douglas. This stock was again recently split at two shares for one, making a total of 3432 shares of stock of R. J. Reynolds Tobacco Company held by her estate. Hattie L. Pepper at the time of her

death owned 100 shares of common stock of the Baltimore and Ohio
Railway Company, which the executor sold and invested the pro-
ceeds therefrom in common stock of the Union Carbide Corporation
and of the General Electric Company. At the time of Mrs. A. P.
Douglas's death, the estate held 45 shares of common stock of
Union Carbide Corporation and 90 shares of common stock of General
Electric Company. At the time of the death of Mrs. A. P. Douglas,
the estate of Hattie L. Pepper held invested income in the amount
of $24,381.23, and cash in the amount of $829.34.

In this proceeding Wachovia prays that the court construe the will
and codicil thereto of Hattie L. Pepper, and determine the following
questions arising in the administration of her estate:

"1.   Under the terms of Paragraph Third of the Will did all
of the income from the residuary estate, or only the maximum
sum of $1,200 per year, vest in the survivor of Mrs. A. P. Douglas
and Miss Nannie Pepper upon the death of the other?

"2.   Under the terms of Paragraph Fourth of the Will and
Paragraph First of the Codicil did the named legatees upon the
death of the testatrix become vested of said stock, i.e., Mrs. J.
C. Dodson — 75 shares of common stock of R. J. Reynolds To-
bacco Company, J. C. Dodson — 25 shares of Common stock of
R. J. Reynolds Tobacco Company, the children of Mrs. J. C. Dod-
son — 7 shares each of common stock of R. J. Reynolds Tobacco
Company, with enjoyment of said stock postponed until the death
of the last to die of Mrs. A. P. Douglas and Miss Nannie Pepper?

or

"Under the terms of Paragraph Fourth of the Will and Para-
graph First of the Codicil did the named legatees upon the death
of the last to die of Mrs. A. P. Douglas and Miss Nannie Pepper
become vested of said stock, i.e., Mrs. J. C. Dodson — 75 shares of
common stock of R. J. Reynolds Tobacco Company; J. C. Dod-
son — 25 shares of common stock of R. J. Reynolds Tobacco Com-
pany; the children of Mrs. J. C. Dodson — 7 shares each of com-
mon stock of R. J. Reynolds Tobacco Company?

"3.   If the answer to the first alternative of question 2 above is
YES then do the specific bequests of paragraph Fourth of said
Will and paragraph First of said Codicil carry with them as ac-
cretions all of the said shares resulting from stock splits since the
testatrix' death,

and

"Do the specific bequests of paragraph Fourth of said Will and
paragraph First of said Codicil carry with them all or any part

of the accretions in the form of cash dividends after the date of death of the testatrix, since the testatrix expressly provided in Item Third of the Will that all income from the remainder of the estate (including all such stock) should go to the sisters, Mrs. A. P. Douglas and Miss Nannie Pepper expressly subject, however, to the direction that the survivor of them should not be entitled to more than $1,200 per year?"

A separate answer was filed to Wachovia's complaint by the following: L. L. Levinson, Administrator of Mrs. N. A. Martin, deceased; Nannie E. Dodson, executrix of Lizzie Pepper (Mrs. J. C.) Dodson, deceased, and Nannie E. Dodson; Philip E. Lucas, ancillary administrator of John Bolt Pepper, deceased; Louise Pepper McClung, executrix of T. R. Pepper, Louise Pepper McClung, Francis D. Pepper, Mallie D. Pepper, executrix of Thomas Otto Pepper, Hiero L. Taylor, and Betty T. Webb; Thomas I. Pepper; Alton Donnie Douglas, ancillary executor of Anna Pepper (Mrs. A. P.) Douglas.

The parties stipulated as follows: All persons having an interest in the subject matter of this proceeding are parties defendant, individually or by their proper legal representative; all defendants are *sui juris* and have been duly served with process; almost all of the defendants have filed answer and were represented by counsel at the hearing; and time for the filing of answers has expired. All answering defendants have agreed that the facts alleged in paragraph 1 through paragraph 18, both inclusive, of the complaint are true. All parties have waived trial by jury, and have agreed that the court should hear the entire matter and render judgment without the intervention of a jury.

At the hearing below Alton Donnie Douglas, ancillary executor of Anna Pepper (Mrs. A. P.) Douglas, offered evidence to the following effect:

Mrs. A. P. Douglas, after a divorce from her husband in 1920, returned with her two sons, one 16 and the other 18½ years of age, from West Virginia to Winston-Salem. At that time Hattie L. Pepper was living with her sister, Mrs. J. C. Dodson, on Summit Street. One of her sisters arranged an apartment for her and her sons on West End Boulevard, a long city block away. Mrs. A. P. Douglas, after her divorce, worked as a clerk in a store in Winston-Salem. After about a year and a half they moved back to West Virginia. Later Mrs. A. P. Douglas moved to a farm at Bethania, North Carolina, that Mrs. J. C. Dodson bought for Nannie Pepper. For a few years Mrs. A. P. Douglas addressed envelopes for a corporation. Her oldest son worked his way through school. Mrs. A. P. Douglas, after her divorce, received a little help from Mrs. J. C. Dodson and Hattie L. Pepper, principally

Hattie L. Pepper, but it was not much. Her divorced husband gave her no support, and only a few dollars pocket money to his youngest son. She never remarried.

At the time of Hattie L. Pepper's death, she owed $38,034, of which $33,000 was owed to her broker Fenner & Beane, by whom she had been buying on margin. The sole income of the estate has been dividends from the stock set forth above. Wachovia has never segregated the Reynolds Tobacco Company stock into specific lots; it "has been carried as a sum total," "all in one pot." From 1928 through 1938 Wachovia, according to the provisions of Item Third of the Will, paid to Nannie Pepper and Mrs. A. P. Douglas each $1,200 or $1,300 annually. Beginning in 1939 the payments dropped to $800, $900, $700, and got down to $639.

The parties stipulated "the stock certificates were not in the name of Hattie L. Pepper, personally, but were in the name of her stockbroker." The record also shows that after Hattie L. Pepper's death, 170 shares of Reynolds Tobacco Company stock were in her safety deposit box.

The other parties offered no evidence.

Upon separate petitions by counsel for the parties, the court entered separate orders allowing counsel fees in the amount of $17,120, of which $11,000 was allowed to McKeithen & Graves, attorneys for Wachovia. No exception was filed by any of the parties to these orders.

The court after making findings of fact based upon the stipulations set forth above, and after considering the pleadings, the evidence both oral and documentary, and the briefs and arguments of counsel, adjudged and decreed as follows:

"1.   That under the terms of Paragraph Third of the Will, Mrs. A. P. Douglas and Miss Nannie Pepper, upon the death of the testatrix, became vested of the income from the remainder of the estate while both of them were living and unmarried, but only the maximum sum of $1,200 per year vested in the survivor of them upon the death of the other.

"2.   The bequests of Paragraph Fourth of the Will and Paragraph First of the Codicil are specific bequests, and carry with them as accretions all of the stock resulting from stock splits since the testatrix' death.

"3.   Under the terms of paragraph Fourth of the Will and paragraph First of the Codicil, the named legatees upon the death of the testatrix became vested of certain stock, to-wit: Mrs. J. C. Dodson — 75 shares of common stock of R. J. Reynolds Tobacco Company, J. C. Dodson — 25 shares of common stock of R. J.

Reynolds Tobacco Company, the children of Mrs. J. C. Dodson — 7 shares each of common stock of R. J. Reynolds Tobacco Company, but with the enjoyment of said stock postponed until the death of the last to die of Mrs. A. P. Douglas and Miss Nannie Pepper.

"4. The bequests of Paragraph Fourth of the Will and Paragraph First of the Codicil carry with them all accretions in the form of cash dividends (directly attributable to the stock designated in said specific bequests) between the time of the death of the testatrix and the time of the death of Mrs. A. P. Douglas.

"5. That Paragraph Second of the Codicil did not supplant Paragraph Fifth of the Will in its entirety, but only amended or modified it by devising two-thirds of the residue of the estate to Mrs. J. C. Dodson and the remaining one-third to Mrs. N. A. Martin, T. R. Pepper, Miss Nannie Pepper, J. G. Pepper, and Mrs. A. P. Douglas, and left the proviso of Paragraph Fifth of the Will standing and unaltered.

"It is FURTHER ORDERED, ADJUDGED, AND DECREED:

"(a) That Wachovia Bank & Trust Company, Executor, pay over and deliver to the following persons the following amounts of common stock of R. J. Reynolds Tobacco Company (which includes stock splits since the death of the testatrix) pursuant to and in fulfillment of the specific bequests of paragraph Fourth of the Will and Paragraph First of the Codicil: Nannie E. Dodson, Executrix of Lizzie Pepper (Mrs. J. C.) Dodson or her assigns — 750 shares, Nannie E. Dodson — 70 shares, Agnes V. Dodson — 70 shares, James R. Dodson — 70 shares, John C. Dodson — 70 shares, Della Dodson Crowell — 70 shares, Nannie E. Dodson and Agnes V. Dodson, Executrixes of Nellie Dodson Boyd — 70 shares, Wachovia Bank & Trust Company, Administrator c.t.a. of Marjorie Dodson Hamner — 70 shares, Wachovia Bank & Trust Company, Executor of J. C. Dodson — 250 shares; and a receipt of Nannie E. Dodson, Executrix, or of her attorneys of record, shall constitute a full acquittance and release of Wachovia Bank & Trust Company, Executor.

"(b) That Wachovia Bank & Trust Company, Executor of Hattie L. Pepper, in the due administration of said estate pay over and deliver to the Ancillary Executor of Anna Pepper Douglas the sum of $100.00 covering the last month of her life or from February 20, 1961, to March 20, 1961, in full settlement of her interest

as the surviving income beneficiary under Paragraph Third of the Will.

"(c) That the 45 shares of common stock of Union Carbide Corporation and the 90 shares of common stock of General Electric Company as referred to in Paragraph 18 of the complaint, and the cash dividends and accumulated income directly attributable to said stock are part of the residue of said estate.

"(d) That all costs in this action, including reasonable compensation for services of counsel allowed by separate orders, and all costs, fees and commissions incident to the complete administration of the estate be paid by the Executor from the accumulated income in said estate if the same be sufficient; and that all such costs, fees and commissions shall be allowed to the Executor in its accounting.

"(e) If the accumulated income in said estate is not sufficient to carry out the purposes directed in (d) above said Executor is expressly authorized to resort to the residuary of said estate and make sale of any stocks therein and apply such of the proceeds derived from such sales as may be necessary to supply the deficiency in order to carry out the provisions in (d) above.

"(f) That all accumulated income over and above the amount which may be required to carry out the provisions and directions of (d) above be allocated and distributed by the executor as between the beneficiaries of the specific legacies (designated in (a) above) and the residuary legatees hereinafter named, in accordance with and pursuant to a formula prepared by the Executor and presented to and approved by all counsel present at the hearing; under which formula the beneficiaries of the specific legacies are entitled to 67.366% of the total thereof and the beneficiaries of the residuary estate are entitled to 32.634% thereof. The foregoing distribution as to each specific legatee shall be in the ratio as provided in 3 above, and as to each residuary legatee or beneficiary in the ratio hereafter provided for the distribution of stock to them.

"It is FURTHER ORDERED, ADJUDGED AND DECREED that the remaining common stock of R. J. Reynolds Tobacco Company in said estate (being 1942 shares) is a portion of the residuary estate and shall be distributed by the Executor — as provided in Paragraph Fifth of the Will as modified by Paragraph Second of the Codicil — as follows: Two-thirds or 50/75ths thereof to Nannie E. Dodson, Executrix of Lizzie Pepper (Mrs.

J. C.) Dodson or her assigns; 6/75th to L. L. Levinson, Administrator of Mrs. N. A. Martin; 6/75ths to Louise Pepper McClung, Executrix of T. R. Pepper; 6/75th to Alton Donnie Douglas, Ancillary Executor of Anna Pepper (Mrs. A. P.) Douglas; 2/75ths to Lelia Joyce Pepper (Mrs. W. W.) Maloney; 2/75ths to Thomas I. Pepper; 2/75ths to Philip E. Lucas, Ancillary Administrator of John Bolt Pepper, and 1/75th to Nannie E. Dodson, Executrix of Lizzie Pepper (Mrs. J. C.) Dodson or to her assigns.

"It is FURTHER ORDERED, ADJUDGED AND DE-CREED that the Executor may make the foregoing distribution of stock in said residuary estate in kind, or in money, or partly in kind and partly in money."

From the judgment, only Alton Donnie Douglas, ancillary executor of the estate of Anna Pepper (Mrs. A. P.) Douglas, deceased, appealed.

*William Joslin for defendant appellant, Alton Donnie Douglas, Ancillary Executor of the Estate of Mrs. A. P. Douglas.*

*Deal, Hutchins and Minor by Edwin T. Pullen for defendant appellees, Louise Pepper McClung, Executrix of T. R. Pepper, Louise Pepper McClung, Francis D. Pepper, Hiero L. Taylor, Betty T. Webb, and Mallie D. Pepper, Executrix of Thomas Otto Pepper.*

*Hudson, Ferrell, Petree, Stockton, Stockton & Robinson by Robert G. Stockton and R. C. Vaughn, Jr., for defendant appellees, Nannie E. Dodson, Executrix of Lizzie Pepper (Mrs. J. C.) Dodson and Nannie E. Dodson.*

PARKER, J. Defendant appellant assigns as error that the court erred in adjudging that the legacies bequeathed by Item Fourth of the Will and by Item First of the codicil thereto are specific legacies, and carried with them all accretions resulting from stock splits after the death of the testatrix, and that the legatees named in these instruments became vested of the stock bequeathed them upon the death of the testatrix but with the enjoyment of said stock postponed until the death of the last to die of Mrs. A. P. Douglas or Nannie Pepper, and that these legacies carried with them all accretions in the form of cash dividends (directly attributable to the stock designated in said specific bequests) between the time of the death of the testatrix and the time of the death of Mrs. A. P. Douglas.

Defendant appellant contends that the bequests of Reynolds Tobacco Company stock in Item Fourth of the will and in Item First of the codicil thereto are demonstrative legacies, and thus do not carry with

them all accretions by way of stock dividends or stock splits and cash dividends that have accrued after the death of the testatrix.

A will speaks only from the death of the testator. *Yount v. Yount,* 258 N.C. 236, 128 S.E. 2d 613; *Coffield v. Peele,* 246 N.C. 661, 100 S.E. 2d 45. "A codicil is a supplement to a will, annexed for the purpose of expressing the testator's after-thought or amended intention. *Green v. Lane,* 45 N.C. 113. It is to be construed with the will itself, and the two are to be considered as constituting a single instrument. *Darden v. Matthews,* 173 N.C. 186, 91 S.E. 835." *Smith v. Mears,* 218 N.C. 193, 10 S.E. 2d 659.

It is hornbook law that the primary duty of the court is to discover the testatrix's intent as expressed in her will and her codicil thereto, and if it is not in contravention of some established rule of law or public policy, such intention must be given effect. *Entwistle v. Covington,* 250 N.C. 315, 108 S.E. 2d 603; *Smith v. Mears, supra.* That must be discovered from the language she used in the will and her codicil thereto, which in cases of ambiguity may be interpreted in the light of conditions existing at the time the will was made and at the time the codicil thereto was made. Strong's N. C. Index, Vol. 4, Wills, secs. 27 and 28.

Item Fourth of the will reads:

"Upon the death or marriage of both of my said sisters, Mrs. A. P. Douglas and Miss Nannie Pepper, I give and bequeath to my sister, Mrs. J. C. Dodson, seventy-five shares of my Common B Stock of the R. J. Reynolds Tobacco Company and I give and bequeath to the children of Mrs. J. C. Dodson (there being seven living at this time), seven shares each of my Common B stock of The R. J. Reynolds Tobacco Company."

Item First of the codicil thereto reads:

"I hereby alter section 'Fourth' of said will by adding in said section my brother-in-law, J. C. Dodson, to whom I give and bequeath twenty-five shares of my Common B Stock of the R. J. Reynolds Tobacco Company. This out of love and affection for him, and in appreciation of his kindness to me."

Stacy, C.J., speaking for a unanimous Court, said in *Heyer v. Bulluck,* 210 N.C. 321, 186 S.E. 356:

"A specific legacy is a bequest of a specific article, distinguished from all others of the same kind, pointed out and labeled by the testator, as it were, for delivery to the legatee, such as a par-

ticular horse, a piece of silver, or money in a certain purse or chest, or a particular corporate stock, or a particular bond or other obligation for the payment of money. *Shepard v. Bryan, supra* [195 N.C. 822, 143 S.E. 835]. 'If the thing bequeathed is, by the terms of the will, individuated so that it is distinguishable from all others of the same kind, it is a specific legacy'—Leaming, V. C., in *Kearns v. Kearns,* 77 N.J. Eq. 453, 76 Atl. 1042, 140 Am. St. Rep. 575.

" A demonstrative legacy is a bequest of money or other fungible goods, payable out of or charged upon a particular fund in such a way as not to amount to a gift of the *corpus* of the fund, or to evince an intent to relieve the general estate from liability in case the fund fail, and so described as to be indistinguishable from other things of the same kind. *Shepard v. Bryan, supra;* 28 R.C.L. 292."

At the time of testatrix's death, she owned 575 shares of Common B stock of R. J. Reynolds Tobacco Company and 100 shares of the common capital stock of the Baltimore and Ohio Railway Company. In Item Fourth of her will and in Item First of her codicil thereto, she gives to the legatees therein named specified numbers of shares "of my Common B stock of the R. J. Reynolds Tobacco Company," thereby naming the particular corporate stock she bequeathed these legatees. From a consideration of the whole will and the whole codicil thereto, and the attendant circumstances at the time these instruments were made, we are satisfied that these legacies are specific, and that it was the clear intent of the testatrix to make these legacies specific.

Our opinion that these are specific legacies finds support in our case of *Smith v. Smith,* 192 N.C. 687, 135 S.E. 855, in which the facts are quite similar. M. F. Nesbit in Item 4th of his will bequeathed and devised to his wife all the residue of his estate to hold during her natural life, the income to be hers absolutely. In Item Fifth he directed that all his property shall remain as it now is under the direction of his wife, so long as she shall live, and after her death, his property shall be distributed as provided in the items following. In Item 10th he bequeathed unto Nannie Lee Kerr Nesbit 20 shares of the capital stock of the Mooresville Cotton Mills, Mooresville, N. C.; in Item 11th ten shares of the same stock to Alice Lee Nesbit Neikirk; in Item 12th ten shares of the same stock to Fred Nesbit Porter; in Item 13th ten shares of the same stock to Barron P. Smith; and in Item 14th

ten shares of the same stock to Lee Parker. It appears from the judgment of the trial judge that the ten shares of stock bequeathed to Lee Parker were revoked and the said ten shares of stock by a codicil to the will were bequeathed to F. E. Nesbit. In Item 19th he provides that the residue of his estate, after the death of his wife, shall be equally divided among persons specified. At the time of his death in 1907, the testator owned 60 shares of the capital stock of the Mooresville Cotton Mills. In January 1917, and subsequently thereto, Mooresville Cotton Mills declared stock dividends, which were delivered to the executor, until the executor held 360 shares of common stock of the mill and 20 shares of its preferred stock. Upon the death of the widow in 1925, the legatees to whom the stock was bequeathed by the testator in items 10th, 11th, 12th, and 13th of the will, and F. E. Nesbit who by codicil to the will received the ten shares of stock bequeathed to Lee Parker in Item 14th of the will, claimed the stock together with the stock dividends. The residuary legatees claimed the stock dividends upon the theory that the legacies were general and not specific. The Court in closing its opinion said: "Our conclusion is, upon the whole record, that the legacies of stock in the Mooresville Cotton Mills were specific, and that the stock dividends accruing upon said shares belong to the legatees named."

Our opinion that these are specific legacies also finds support in our case of *Bost v. Morris*, 202 N.C. 34, 161 S.E. 710. In this case Item 2 of testator's will reads: "I give and bequeath to my sister, Minnie E. Morris, if she survives me, ten thousand dollars in stocks in an incorporated company or companies to be selected by her, at its then par value." In Item 6 of his will the testator gave and devised all the rest and residue of his estate in fee simple to certain named beneficiaries. The executor qualified and on 14 December 1927 delivered to Minnie E. Morris, the legatee in Item 2, a list of the stocks found in the lock box of the deceased. On the stock selected by Minnie E. Morris, the dividends amounted to $431. The Court held that upon the exercise of the power of selection of the stock by the legatee, Minnie E. Morris, the bequest was rendered specific and the legatee was entitled to all dividends declared thereon from the date of the testator's death.

Our conclusion also finds support in the case of *Butler v. Dobbins*, 142 Me. 383, 53 A. 2d 270, 172 A.L.R. 361. In this case, provisions of a will of a testatrix who owned sixty-five shares of stock of a bank bequeathing to each of two daughters of her late husband "twenty-one shares of the capital stock held by me" in the bank, with a residuary clause in favor of her brother, show an intention to make specific

bequests to the daughters, and to divide the stock as nearly equally as feasible between them and her brother.

This is said in Annotation 116 A.L.R. 1130:

> "* * *specific legacies or devises are severed from the general estate of the testator immediately upon his death, and, in the absence of any provision to the contrary in the will, they become payable at the death of the testator. Consequently, according to the rule almost universally recognized by the courts, in the absence of a contrary intention in the will, such legacies or devises carry with them to the specific legatee or devisee any interest, dividends, rents, profits, or accretions, not otherwise disposed of by the will, that may have accrued on them from the death of the testator until the actual satisfaction of the legacy or devise; and such interest, dividends, etc., do not become a part of the general or the residuary estate of the testator. This general principle is either recognized or applied in the following cases:* * *."

Cases from 22 States, from the District of Columbia, from Federal Courts, and from England are cited in support of the text. The following are cited from North Carolina: *Nelson v. Nelson,* 41 N.C. 409; *Redding v. Allen,* 56 N.C. 358; *Harrell v. Davenport,* 58 N.C. 4; *Rogers v. McKenzie,* 65 N.C. 218; *Holly v. Holly,* 94 N.C. 670; *Smith v. Smith, supra; Bost v. Morris, supra,* which support the text. To the same effect: 57 Am. Jur., Wills, sec. 1615; 6 Bowe-Parker: Page on Wills, p. 423, which cites cases from many jurisdictions, including our cases of *Smith v. Smith, supra,* and *Bost v. Morris, supra*; 96 C.J.S., Wills, sec. 1101, pp. 824-827.

It is apparent that by Item Fourth of her will and Item First of her codicil thereto, and by the residuary clauses in her will and her codicil thereto, testatrix intended to dispose of her entire interest in the R. J. Reynolds Tobacco Company. The declaration of a stock split by a corporation is nothing more than the division of one share into two or more parts. Obviously, considering the will and codicil thereto as constituting one instrument, the things which testatrix intended to give the legatees named in Item Fourth of her will and Item First of her codicil thereto were not the mere paper certificates for the number of shares of stock therein specified, but the interests which those shares of stock represented in the R. J. Reynolds Tobacco Company, so far as stock splits are concerned arising or accruing since testatrix's death. Action taken by the R. J. Reynolds Tobacco Company in voting stock splits of its Common B stock should not result in the legatees of

these specific bequests getting merely the number of shares specified in Item Fourth of the will and in the First Item of the codicil thereto, and consequently receiving a less interest than the shares of stock bequeathed represented in the R. J. Reynolds Tobacco Company, thereby defeating the purpose and intent of the testatrix. It is manifest that there is no contrary intention in the will and the codicil thereto, considered as constituting a single instrument, to prevent the operation of the rule almost universally recognized by the courts that the specific legacies here carry with them to the specific legatees all stock dividends and stock splits that have accrued on them after the death of the testatrix and before the actual satisfaction of the specific legacies, with the result that such accretions of stock do not become a part of testatrix's general or residuary estate.

These specific legacies vested in the legatees upon the death of testatrix because there was a present fixed right of future enjoyment, which was upon the death of the last to die of Nannie Pepper or Mrs. A. P. Douglas. The specific legacies vested in the children of Mrs. J. C. Dodson were subject to open so as to make room for any children thereafter born to Mrs. J. C. Dodson. It appears from the record no other children were born. *Trust Co. v. Taylor,* 255 N.C. 122, 120 S.E. 2d 588; *Trust Co. v. McEwen,* 241 N.C. 166, 84 S.E. 2d 642; *Morrell v. Building Management,* 241 N.C. 264, 84 S.E. 2d 910; *Patrick v. Beatty,* 202 N.C. 454, 163 S.E. 572.

Testatrix in Item First of her will provides for the payment of her funeral expenses and debts from the proceeds of an insurance policy and from the first money received by her executor from her estate. In Item Second of her will she devises her one-eighth interest in a farm. In the first sentence of Item Third of her will she bequeaths to her sisters Nannie Pepper and Mrs. A. P. Douglas "during their lifetime or until marriage, *all the income derived from the remainder of my estate, of whatsoever nature and wheresoever situate,* and I direct my executor hereinafter named to divide this fund equally between them quarterly." (Emphasis supplied.) In Item Fourth of her will and in Item First of her codicil thereto she bequeaths the specific legacies above mentioned. It is patent that testatrix in Item Third of her will expressed a clear intention that all the cash dividends paid on these specific legacies and all other income from her estate should be paid to Nannie Pepper and Mrs. A. P. Douglas by her executor "during their lifetime or until marriage," and consequently during such specified time these specific legacies set forth in Item Fourth of the will and Item First of the codicil thereto do not carry with them these cash dividends. It seems clear that this was the construction placed upon the

will and the codicil thereto by Wachovia, and probably by all beneficiaries under the will and codicil thereto, because Wachovia from 25 August 1928, the date on which it qualified as executor, to the date of Nannie Pepper's death on 30 January 1945 paid all net income from testatrix's estate to Nannie Pepper and Mrs. A. P. Douglas in equal shares, and there is nothing in the record to indicate that any beneficiary under the will and codicil thereto objected. The judge below was in error in adjudicating that the specific bequests set forth in Item Fourth of the will and in Item First of the codicil thereto carried with them all accretions in the form of cash dividends, directly attributable to the stock designated in these specific bequests, from testatrix's death to the time of the death of Nannie Pepper.

The last sentence of Item Third of the will reads: "Upon the death or marriage of either, the survivor shall be entitled *to the whole of said income, but not exceeding $1,200.00 per year.*" (Emphasis supplied.)

From the time of Nannie Pepper's death on 30 January 1945, Wachovia, the executor, paid to Mrs. A. P. Douglas until the month before her death on 20 March 1961 from the net income of the estate the sum of $1,200 per year in monthly installments of $100. The net income of the estate after Nannie Pepper's death considerably exceeded the sum of $1,200 per year in most, if not all, years, because at the time of Mrs. A. P. Douglas's death on 20 March 1961 the estate had accumulated and invested income in the amount of $24,381.23 and cash in the sum of $829.34, due to the large growth in profits of the R. J. Reynolds Tobacco Company.

Defendant appellant assigns as error that the court below adjudged that under the terms of Item Third of the will only the maximum sum of $1,200 per year vested in Mrs. A. P. Douglas after the death of Nannie Pepper. Defendant appellant contends "the will and codicil read in light of testatrix's circumstances show her intention of giving all of the income to her two sisters for their joint lives, and to the survivor," and that the accumulated and invested income in testatrix's estate of $24,381.23 should be paid to the estate of Mrs. A. P. Douglas. The question whether it was testatrix's intent to give to the survivor of Nannie Pepper or Mrs. A. P. Douglas during the survivor's lifetime all income of the estate must be decided before we reach the question whether the specific legacies bequeathed by Item Fourth of the will and by Item First of the codicil carried with them to the specific legatees all accretions in the form of cash divi-

dends, directly attributable to the stock designated in the specific legacies, between the time of the death of Nannie Pepper and the time of the death of Mrs. A. P. Douglas.

Defendant appellant's contention that testatrix took more than just a normal interest in the maintenance and welfare of her sisters Nannie Pepper and Mrs. A. P. Douglas because one was unmarried and the other divorced finds no support in the provisions of the will, the codicil thereto, and in the evidence introduced by him. His evidence is to the effect that when Mrs. A. P. Douglas returned to Winston-Salem with her two sons age 16 and 18½ years from West Virginia after her divorce the testatrix was living with her sister Mrs. J. C. Dodson. That she received a little help from Mrs. J. C. Dodson and testatrix, principally testatrix, but it was not much. The will and codicil thereto show generous provisions for testatrix's brothers and sisters, but that the most generous provisions were made for Mrs. J. C. Dodson, her husband, and children.

According to evidence offered by defendant appellant, Wachovia for the first accounting year of the estate, 25 August 1928 to 25 August 1929, paid from the net income of the estate $1,340.11 to Nannie Pepper and $1,349.09 to Mrs. A. P. Douglas. From 1928 through 1938 Wachovia paid to Nannie Pepper and Mrs. A. P. Douglas from the net income of the estate $1,200 to $1,300 a year each. The sole income of the estate has been from dividends from stock of the R. J. Reynolds Tobacco Company and from stock bought with the proceeds of the sale of the stock of the Baltimore and Ohio Railway Company. It is legitimate to infer that when testatrix made her will on 7 April 1927 and her codicil thereto on 12 June 1928, she knew with reasonable certainty the income of her estate, that it was in excess of $2,400 per year, and anticipated that after the death of Nannie Pepper or Mrs. A. P. Douglas the income from her estate would exceed the sum of $1,200 per annum.

While it is possible to argue that Mrs. A. P. Douglas, after Nannie Pepper's death, is entitled to "the whole of said income," this phrase cannot possibly be reconciled with the words immediately following, "but not exceeding $1,200.00 per year." This same item in the preceeding sentence provides that Mrs. A. P. Douglas and Nannie Pepper "during their lifetime or until marriage" should receive "all of the income derived from the remainder of my estate," and in addition it appears that the predominant purpose or general scheme of the will and codicil thereto is that, after the more generous provisions made for Mrs. J. C. Dodson, her husband, and children, her other brothers and sisters should receive approximately equal parts, with the ex-

ception of the bequest to Nannie Pepper and Mrs. A. P. Douglas in Item Third of the will. Defendant appellant's contention can only be sustained by taking one small phrase out of context and disregarding the attendant circumstances when the instruments were executed and the general scheme or predominant purpose of these instruments, and thereby placing Mrs. A. P. Douglas, or her estate, in a position more favorable than expressed in the words of the will and codicil thereto. Doubtless, testatrix could have expressed herself in a clearer manner than she did in the last sentence of Item Third of her will. Her intent, however, is manifest, and the last sentence of Item Third of her will, considered in connection with all the provisions of the will and the codicil thereto, considered as constituting one instrument, and the attendant circumstances when these instruments were executed, can only mean one thing, and that is that Mrs. A. P. Douglas, after the death of Nannie Pepper, is to be paid during her remaining lifetime from the income of the estate an amount "not exceeding $1,200.00 per year," and no more. Defendant appellant's contention that under the provisions of Item Third of the will all of the income of the estate vested in Mrs. A. P. Douglas after the death of Nannie Pepper is not tenable.

This Court said in *Gatling v. Gatling,* 239 N.C. 215, 79 S.E. 2d 466:

> "The epigram of Sir William Jones over 250 years ago 'no will has a brother' has been often quoted by the courts. *Ball v. Phelan,* 94 Miss. 293, 49 So. 956, 23 L.R.A. (N.S.) 895; *Meeker v. Draffen,* 201 N.Y. 205, 94 N.E. 626, 33 L.R.A. (N.S.) 816. Two wills rarely use exactly the same language. Every will is so much a thing of itself, and generally so unlike other wills, that it must be construed by itself as containing its own law, and upon considerations pertaining to its own peculiar terms. Probing the minds of persons long dead as to what they meant by words used when they walked this earth in the flesh is, at best, perilous labor. As said by Smith, C.J., in *Brawley v. Collins,* 88 N.C. 605, 'it is seldom that we can derive aid from an examination of adjudicated cases.' "

We have found no adjudicated case construing wills using exactly the same language as the will and codicil here. However, our conclusion finds support in the principles of law stated and in the reasoning used by Courts in the following cases construing wills using language somewhat similar to the instruments here: *Manufacturers Trust Company v. Earle,* 32 N.J. Super. 262, 108 A. 2d 115; *Willis v. Hendry,* 127 Conn. 653, 20 A. 2d 375; *In re Berthet's Estate,* 196 N.Y.S. 2d 354;

*In re Charters' Estate*, 46 Cal. 2d 227, 293 P. 2d 778; *Saucier v. Saucier*, 256 Mass. 107 (same case reported as *Saucier v. Fontaine*, 152 N.E. 95).

Absent a contrary provision in the will and the codicil thereto, considered as constituting a single instrument, these specific legacies carry with them to the specific legatees after Nannie Pepper's death all cash dividends directly attributable to the stock designated in these specific legacies after Nannie Pepper's death, except such cash dividends, or part of them, for each year, if any, that were required to make up the payment of $1,200 per year to Mrs. A. P. Douglas during her lifetime after Nannie Pepper's death. It seems no part of such cash dividends was required for the purpose, because the record shows that at the time of Mrs. A. P. Douglas's death on 20 March 1961 the estate of testatrix owned and held invested income in the amount of $24,381.23 and cash in the amount of $829.34, which apparently was accumulated after Nannie Pepper's death on 30 January 1945. It would seem from the record that these cash dividends form a part of the invested income of $24,381.23, and possibly a part of the cash in the amount of $829.34 owned and held by the estate of testatrix at the time of the death of Mrs. A. P. Douglas.

There is no merit to defendant appellant's contention that the accumulated and invested surplus income belonging to and in the estate in excess of the $1,200 per year paid to Mrs. A. P. Douglas during her lifetime after Nannie Pepper's death should be paid to the estate of Mrs. A. P. Douglas. There is nothing in the will and codicil thereto, considered as constituting one instrument, to indicate that surplus income of the estate, in excess of that the specific legacies carry with them to the specific legatees after Nannie Pepper's death, should do other than accumulate. In Annotation 157 A.L.R. 674, it is said: "On the other hand, there is considerable authority that surplus income should be accumulated if there is nothing to indicate that it was intended to be disposed of otherwise." Among the cases cited to support this statement is our case of *Commerce Union Trust Co. v. Thorner*, 198 N.C. 241, 151 S.E. 263, which involved a will setting up a trust during the natural life of the testator's wife and for a period of not less than ten years after the date of the testator's death, and providing that three-fourths of the income should be paid to the wife as long as she should live, and one-fourth to the testator's daughter, and that on the termination of the trust the trustee should distribute the *corpus* to the testator's four children, if living, share and share alike, but that if any of such children should have died leaving lawful issue, then his or her share should be held in trust for the benefit of such issue, but mak-

ing no provision for the distribution of the income going to the wife in case she should die before the expiration of the period of ten years, and in which it was held that such income should be kept and reinvested by the trustees as an accumulation of the *corpus* of the trust estate until the termination of the trust, and then divided in accordance with the distribution specified in the will.

Defendant appellant assigns as error the adjudication of the court that all costs incident to the complete administration of testatrix's estate, including reasonable counsel fees and costs of administration, shall be paid by the executor from the accumulated income in the estate if the same is sufficient.

G.S. 6-21, and subsection 2 thereof, provide that in any action or proceeding which may require the construction of any will or trust agreement, or fix the rights and duties of parties thereunder, costs shall be taxed against either party, or apportioned among the parties, in the discretion of the court. In the last sentence of G.S. 6-21 it is stated: "The word 'costs' as the same appears and is used in this section shall be construed to include reasonable attorneys' fees in such amounts as the court shall in its discretion determine and allow." *Little v. Trust Co.*, 252 N.C. 229, 113 S.E. 2d 689. Defendant appellant does not contend in his brief that the fees allowed counsel were unreasonable. Nothing to the contrary appearing in the record, it will be taken that the court taxed the costs and attorneys' fees in the exercise of its discretion. *Hoskins v. Hoskins*, 259 N.C. 704, 131 S.E. 2d 326. The court allowed counsel fees in the amount of $17,120. It would seem that the costs and counsel fees will take all, or nearly all, of the invested income and cash in the estate, and exhaust all, or a part of, the cash dividends directly attributable to the stock designated in the specific legacies after Nannie Pepper's death. Whether this is correct or not, such a ruling is beneficial to defendant appellant, or at least not injurious to him. The brief filed by counsel for defendant appellees, Nannie E. Dodson, Executrix of Lizzie Pepper (Mrs. J. C.) Dodson, and Nannie E. Dodson closes with these words: "For the foregoing reasons, these appellees respectfully request that this Court affirm the trial court in all respects." There is nothing in the record to indicate the judge abused his discretion in decreeing that the attorneys' fees and costs shall be paid from the accumulated and invested surplus, if the same is sufficient, and his judgment in this respect will not be disturbed, particularly as none of the beneficiaries of the specific legacies except to the judgment below.

To summarize, the results are:

All defendant appellant's assignments of error have been considered, and the judgment below is affirmed with these modifications:

One.    Paragraph 4 of the judgment shall be altered to read: The specific bequest in Item Fourth of the will and Item First of the codicil thereto do not carry with them to the specific legatees the cash dividends directly attributable to the stock designated in said specific bequests between the date of testatrix's death and the time of the death of Nannie Pepper, but they do carry with them to the specific legatees such cash dividends from the time of the death of Nannie Pepper to the time of the death of Mrs. A. P. Douglas, except such cash dividends, or part of them, for each year, if any, that were required to make up the payment of $1,200 per year to Mrs. A. P. Douglas during her lifetime after Nannie Pepper's death.

Two.    It may be, and probably will be, due to large expenses and counsel fees, that the payment of costs and counsel fees will exhaust the accumulated and invested surplus and cash in the estate. From the state of the record we cannot determine. But in the event there is a surplus, paragraph (f) of the judgment will be amended so that the beneficiaries of the specific legacies will receive as specific legatees no part of the cash dividends on their specific legacies which such specific legacies do not carry with them to the specific legatees, but such cash dividends, if any, which the specific legacies do not carry to the specific legatees, will be divided as part of the residuary estate.

Modified and affirmed.